# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| RICKY R. FRANKLIN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:19-CV-3852-MLB |
| | ) | Honorable Judge Michael L. |
| v. | ) | Brown |
| | ) | |
| CITIMORTGAGE, INC., | ) | |
| | ) | |
| Defendant. | ) | JURY TRIAL DEMANDED |
| | ) | |

## BRIEF IN SUPPORT OF DEFENDANT CITIMORTGAGE, INC.'S MOTION FOR SUMMARY JUDGMENT

In support of its Motion for Summary Judgment, Defendant CitiMortgage, Inc. ("CMI" or "Defendant") respectfully states as follows:

## I.     INTRODUCTION

Plaintiff Ricky R. Franklin ("Franklin" or "Plaintiff") alleges CMI violated the federal Telephone Consumer Protection Act 82 times by calling his cell phone using an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice. In support of his allegations, he is producing a self-created and self-compiled call log and six recordings of calls to his cell phone from a CMI representative. Nothing more.

Franklin's evidence does not create a genuine issue of material fact because CMI's records prove that it did not use an ATDS to call Franklin's cell phone during

the relevant time, and it did not use an artificial or prerecorded voice, either. Despite several months of discovery and a lengthy deposition, Franklin has been unable to produce any evidence corroborating his allegations. In short, Franklin's claims cannot survive summary judgment and are subject to judgment in CMI's favor.

## II. BRIEF STATEMENT OF FACTS

### A. Franklin's Relationship to CMI

Franklin obtained a mortgage loan in 2003, and CMI serviced that mortgage loan (the "Loan") for almost 12 years: from October 22, 2007, through March 31, 2019. (*See* Defendant's Statement of Material Facts as to Which There is No Genuine Issue to Be Tried ("SMF"), concurrently filed herewith, at ¶ 1; Declaration of Kyle Ramey ("CMI Dec."), attached hereto as **Exhibit A**, at ¶¶ 3, 7, 28.) While CMI serviced the Loan, it identified the Loan within its records by assigning to it a ten-digit number ending in 0060. (SMF, ¶ 2; CMI Dec., ¶ 3.)

On or about November 2, 2015, Franklin sued CMI in this Court and alleged CMI committed various wrongdoings related to the Loan (the "2015 Lawsuit"). (SMF, ¶ 3; CMI Dec., ¶ 8.) In part due to that litigation, CMI marked the Loan in its records with a "cease and desist" code. (SMF, ¶ 4; CMI Dec., ¶ 9.) When this code is applied to a loan, the code removes the loan from all phone campaigns initiated

by CMI. (SMF, ¶ 5; CMI Dec., ¶ 10.) The 2015 Lawsuit was resolved on or about November 22, 2016. (SMF, ¶ 6; CMI Dec., ¶ 11.)

On or about March 27-28, 2017, CMI removed the "cease and desist" code on the Loan and sent Franklin a letter asking him to update his contact information now that the "cease and desist" code on the Loan had been removed. (SMF, ¶¶ 7-8; CMI Dec., ¶¶ 12-13.) On or before May 2, 2017, Franklin returned the letter to CMI (the "Letter") and identified a phone number ending in 3733 as both his home phone number and his other/alternate phone number. (SMF, ¶ 9; CMI Dec., ¶ 14, Ex. A2 attached thereto; Deposition of Ricky R. Franklin conducted December 15, 2020, excerpts from the transcript of which are attached hereto as **Exhibit B** ("Franklin Tr."), 187:19-190:11, Ex. 20 attached thereto.) In the Letter, Franklin also gave CMI express written consent to contact his cell phone, and Franklin agreed to receive from CMI and its service providers "calls and messages such as prerecorded messages, calls and messages from automated dialing systems, and text messages." (SMF, ¶ 10; CMI Dec., ¶ 15.) Franklin contends he revoked this consent numerous times, though he could not identify specific dates on which he revoked consent during his deposition. (SMF, ¶ 11; Franklin Tr., 144:8-13; 145:4-11; 184:22-185:6; 190:4-11.) He testified the earliest revocation of the consent he gave in the Letter occurred on February 13, 2018. (SMF, ¶ 12; Franklin Tr., 187:5-11; 189:18-190:11.)

## B.     Franklin's Allegations and Evidence of Wrongdoing

Franklin alleges that, beginning on <u>February 13, 2018</u>, CMI began calling his cell phone using an "automatic telephone dialing system" <u>or</u> an artificial or prerecorded voice, in violation of the Telephone Consumer Protection Act ("TCPA," 47 U.S.C. § 227). (SMF, ¶ 13; Compl., ¶ 15, emphasis supplied.) He testified during his deposition he had withdrawn his consent to receive such contact from CMI as early as February 13, 2018. (SMF, ¶ 14; Franklin Tr., 187:5-11; 189:18-190:11.)

In purported support of his allegations, Franklin produced a log of 82 calls CMI made to his cell phone, which has a phone number ending in 3733 ("Franklin's Cell Phone" or "his Cell Phone"), between February 13, 2018, and March 18, 2019. (SMF, ¶ 15; Franklin Tr., 29:8-32:19, Ex. 3 attached thereto.) Franklin created the call log himself. (SMF, ¶ 16; Franklin Tr., 29:8-32:19.) It is not an independent business record from a cell service provider or other objectively reliable source.

Importantly, Franklin alleges CMI made <u>all</u> 82 calls using an automatic telephone dialing system ("ATDS"), but only <u>some</u> of the calls involved the use of an artificial or prerecorded voice. (SMF, ¶ 17; Compl., ¶ 15; Franklin Tr., 193:17-22.)

Franklin testified that 81 of the 82 calls reflected on his call log fall into one of four categories:

(1) calls from CMI that he answered in which he was greeted by an "automated voice" that instructed him to "stay on the line for a very important message from citimortgage [sic]," where he sometimes later spoke with a live customer service representative;

(2) calls from CMI that he answered in which he was greeted by an "automated message" stating "please give us a call back about a personal business matter," then the call ended;

(3) calls from CMI which he answered and in which he spoke to a live customer service representative (no "automated message" used); and

(4) calls from CMI he did not answer and that did not result in any voice message.

(SMF, ¶ 18; Franklin Tr., 136:1-137:11.)[1]

For clarity, the entries in Franklin's call log are summarized as follows:

---

[1] The only call on Franklin's call log that does not fit into these four categories is entry #55, which Franklin concedes resulted in a voicemail left by a human being. (SMF, ¶ 19; Franklin Tr., 133:7-11, 137:8-11.)

| | Category description | Entries corresponding to Category | Total number of calls in Category |
|---|---|---|---|
| 1 | Calls from CMI that Franklin answered in which he was greeted by an "automated voice" that instructed him to "stay on the line for a very important message from citimortgage [sic]," where he sometimes later spoke with a live customer service representative | 1, 4, 7, 8, 9, 12, 13, 14, 40, 41, 42, 58, 61, 65, 66, 68, 72, 73, 74, 76, 79, 81 | 22 |
| 2 | Calls from CMI that Franklin answered in which he was greeted by an "automated message" stating "please give us a call back about a personal business matter," then the call ended | 15, 16, 19, 20, 23, 24, 32, 33, 34, 35, 39, 43, 44, 45, 47, 49, 52, 62, 70, 71, 83 | 21 |
| 3 | calls from CMI that Franklin answered and in which he spoke to a live customer service representative (no "automated message" used) | 6, 10, 11, 25, 26, 28, 29, 30, 31, 36, 37, 38, 48, 50, 51, 53, 60 | 17 |
| 4 | Calls from CMI that Franklin did not answer and that did not result in any voice message | 2, 3, 17, 18, 21, 22, 27, 46, 54, 56, 57, 59, 63, 64, 67, 69, 75, 77, 78, 80, 82 | 21 |
| | | *Total calls:* | *81*[2] |

(SMF, ¶ 21; Franklin Tr., 36:13-37:20; 52:20-53:8; 54:1-22; 56:17-57:8; 57:21-58:11; 58:25-59:13; 60:9-20; 61:11-14; 61:22-62:11; 62:19-63:3; 63:14-21; 64:16-22; 65:17-25; 66:19-24; 67:24-68:14; 70:8-20; 71:12-72:4; 72:12-21; 72:25-73:11;

---

[2] Although there are 83 entries on Franklin's call log, one entry (#5) is erroneous; it is a continuation of #4 and should not have been a separate entry. (SMF, ¶ 20; Franklin Tr., 55:22-56:9.) So Franklin's call log has 83 entries but reflects a total of 82 calls, 81 of which fall into one of the four categories above. *See supra* n.1.

74:3-20; 75:12-18; 76:12-17; 77:3-10; 78:8-20; 79:14-24; 80:18-81:5; 82:15-83:1; 83:7-17; 83:22-84:11; 84:21-85:12; 85:16-25; 86:4-9; 86:17-88:5; 88:10-23; 89:20-90:12; 91:9-25; 92:15-93:12; 93:25-94:13; 94:18-95:4; 95:9-96:13; 97:3-22; 98:15-99:3; 101:17-102:3; 103:13-24; 104:16-22; 105:22-106:9; 106:25-107:16; 108:6-109:7; 109:11-22; 110:11-111:13; 111:20-112:7; 113:4-13; 114:7-115:15; 117:9-118:24; 119:22-120:5; 120:14-121:1; 121:8-25; 122:17-123:14; 124:3-19; 125:3-16; 129:9-130:1; 130:10-23; 131:19-22; 132:1-133:1.)

In short, according to the information gleaned from Franklin's call log and his deposition, only 43 of the 82 calls involved the use of an artificial or prerecorded voice (Categories 1 and 2 above). (SMF, ¶ 22; Franklin Tr., 36:13-37:20; 52:20-53:8; 54:1-22; 56:17-57:8; 57:21-58:11; 58:25-59:13; 60:9-20; 61:11-14; 61:22-62:11; 62:19-63:3; 63:14-21; 64:16-22; 65:17-25; 66:19-24; 67:24-68:14; 70:8-20; 71:12-72:4; 72:12-21; 72:25-73:11; 74:3-20; 75:12-18; 76:12-17; 77:3-10; 78:8-20; 79:14-24; 80:18-81:5; 82:15-83:1; 83:7-17; 83:22-84:11; 84:21-85:12; 85:16-25; 86:4-9; 86:17-88:5; 88:10-23; 89:20-90:12; 91:9-25; 92:15-93:12; 93:25-94:13; 94:18-95:4; 95:9-96:13; 97:3-22; 98:15-99:3; 101:17-102:3; 103:13-24; 104:16-22; 105:22-106:9; 106:25-107:16; 108:6-109:7; 109:11-22; 110:11-111:13; 111:20-112:7; 113:4-13; 114:7-115:15; 117:9-118:24; 119:22-120:5; 120:14-121:1; 121:8-25; 122:17-123:14; 124:3-19; 125:3-16; 129:9-130:1; 130:10-23; 131:19-22; 132:1-

133:1.) The remaining 39 calls did not involve the use of an artificial or prerecorded voice but, according to Franklin, CMI made those calls using an ATDS. (SMF, ¶ 23; Franklin Tr., 193:17-22.)

Additionally, Franklin produced a recording of six of the 82 phone calls listed on his log. (SMF, ¶ 24; Franklin Tr., 138:20-139:25; 140:17-141:12; 142:5-143:5; 143:12-144:7; 144:18-145:3; Declaration of Amy L. Hanna Keeney ("Keeney Dec."), attached hereto as **Exhibit C**, at ¶¶ 11, 21-23, Ex. C15-19, C21 attached thereto.) All six of the recordings involve a live, human agent of CMI. None of the six recordings evidences the use of an artificial or prerecorded voice. (SMF, ¶ 25; Franklin Tr., 138:20-139:25; 140:17-141:12; 142:5-143:5; 143:12-144:7; 144:18-145:3; Keeney Dec. at ¶¶ 11, 21-23, Ex. C15-19, C21 attached thereto.)

Franklin does not have any evidence of CMI using an artificial or prerecorded voice in a call to his cell phone, as listed in Categories 1 and 2 of the table on p.6 *supra*, other than his own recollection of it occurring. (SMF, ¶ 26; Franklin Tr., 42:21-25; 55:4-6; 55:15-21; 58:20-24; 59:23-60:8; 61:4-10; 64:9-12.; 65:4-12; 66:19-21; 67:12-21; 69:6-15; 71:2-11; 73:18-74:2; 75:19-22; 76:2-8; 79:25-80:2; 80:8-14; 81:15-25; 89:9-19; 90:21-91:5; 92:7-14; 93:13-20; 96:18-97:2; 98:8-14; 99:13-15; 100:11-16; 102:20-103:4; 103:9-12; 104:6-15; 105:12-21; 107:24-108:5; 110:2-10; 112:13-21; 113:22-114:6; 119:9-17; 122:7-16; 123:21-124:2; 124:20-

125:2; 127:2-6; 131:10-18; 131:19-22.) Franklin concluded that the voices sounded "automated" because the messages were "one-sided conversations" that were "generic." (SMF, ¶ 27; Franklin Tr., 40:41:10; 55:7-11; 58:12-19; 59:19-22; 63:22-64:5; 64:23-65:3; 66:25-67:11; 69:1-5; 70:21-71:1; 73:12-17; 75:23-76:1; 80:3-7; 81:6-12; 89:1-5; 90:13-20; 92:1-6; 93:4-12; 96:11-17; 98:2-7; 99:4-12; 102:8-19; 103:25-104:5; 104:23-105:11; 107:17-23; 109:23-110:1; 112:8-12; 113:14-21; 118:25-119:8; 122:1-6; 123:15-20; 124:17-19; 125:18-24; 130:2-9; 130:24-131:9; 131:19-22.) Franklin has not retained or produced any recordings of any such "automated" voice, and he never had anyone else listen to the voice to suggest an automated voice, as opposed to live speech, was used. (SMF, ¶ 28; Franklin Tr., 55:4-6; 58:7-8; 59:23-24; 60:21-22; 64:6-8; 65:11-12; 69:6-7; 71:2-3; 73:18-20; 81:15-17; 89:14-16; 91:1-2; 92:7-9; 93:13-14; 96:18-20; 99:16-100:10; 102:20-23; 103:9-12; 104:6-8; 105:12-14; 108:2-3; 110:9-10; 112:13-14; 114:1-3; 119:16-17; 125:1-2; 131:14-15; 131:19-22.)

## C. CMI's Telephone Platform

Between March 30, 2017, and March 26, 2019, at various times CMI used the Aspect Unified IP 7.3 dialing platform ("Aspect Platform") to initiate communications to its borrowers. (SMF, ¶ 29; CMI Dec., ¶ 16.) The Aspect Platform only initiates communications to telephone numbers uploaded by CMI. The Aspect

Platform does not generate or initiate communications using a random or sequential number generator. (SMF, ¶ 30; CMI Dec., ¶ 17; Declaration of Don Hudecek ("Hudecek Dec."), attached hereto as **Exhibit D**, at ¶ 8.)

Aspect Software, Inc. ("Aspect") supplied the Aspect Platform to CMI. (SMF, ¶ 31; Hudecek Dec., ¶¶ 4-6.) The Aspect Platform is a contact center system that supports both inbound and outbound engagement. The Aspect Platform includes a dialer component in order to support outbound engagements. (SMF, ¶ 32; Hudecek Dec., ¶ 5.) It is critical to note that the Aspect Platform does not have the capacity to produce phone numbers using a random or sequential number generator. (SMF, ¶ 33; Hudecek Dec., ¶ 8.) The only telephone numbers that the Aspect Platform can dial are those inputted into an Aspect customer's database and downloaded by the customer into the Aspect Platform. (SMF, ¶ 34; Hudecek Dec., ¶ 8.) Aspect is unaware of any application that would alter the Aspect Platform's behavior such that the Aspect Platform would be capable of producing phone number using a random or sequential number generator. (SMF, ¶ 35; Hudecek Dec., ¶ 8.)

**D.    Communications between CMI and Franklin**

CMI maintains a record of each time it contacts any borrower on any loan it services, whether that contact occurred by using the Aspect Platform or by other means. (SMF, ¶ 36; CMI Dec., ¶ 18.) A report of all the calls CMI made to Franklin

regarding the Loan between March 30, 2017, and March 26, 2019, is maintained in CMI's business records and is often referred to as the "Communication Report." (SMF, ¶ 37; CMI Dec., ¶¶ 19, 20.) The Communication Report for the Loan includes not only calls to Franklin made by CMI using the Aspect Platform, but all calls made to Franklin concerning the Loan – regardless of method – between March 30, 2017, and March 26, 2019. (SMF, ¶ 38; CMI Dec., ¶ 20.)

The only calls made to Franklin using the Aspect Platform occurred between March 30, 3017, and April 7, 2017 – almost a year before Franklin alleges CMI began calling him in violation of the TCPA on February 13, 2018. (SMF, ¶ 39; CMI Dec., ¶¶ 21, 22, Ex. A3 attached thereto.) Moreover, CMI did not make those calls to Franklin's Cell Phone. Those calls were made to a different phone number ending in 2542. (SMF, ¶ 40; CMI Dec., ¶¶ 21, 22, Ex. A3 attached thereto)

**E.      CMI's Use of Agent-Initiated Contact to Call Franklin's Cell Phone**

CMI did <u>not</u> use the Aspect Platform to contact Franklin's Cell Phone beginning May 10, 2017. (SMF, ¶ 41, emphasis supplied; CMI Dec., ¶¶ 23-25.) Rather, every call made to Franklin's Cell Phone between May 10, 2017, and March 26, 2019, was an "Agent-Initiated Contact," meaning a live, human agent reviewed the account in question before physically dialing the primary phone number associated with the account by hand on a telephone. (SMF, ¶ 42; CMI Dec., ¶¶ 23-

25.) When an Agent-Initiated Contact call is connected, the agent speaks directly to the call's recipient. (SMF, ¶ 43; CMI Dec., ¶ 24.) There is no artificial or prerecorded voice used in an Agent-Initiated Contact. (SMF, ¶ 44; CMI Dec., ¶¶ 24, 26.)

## III. ARGUMENT AND CITATION OF AUTHORITY

### A. Legal Standard for Summary Judgment

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To be material, a fact must be identified by the controlling substantive law as an essential element of the non-moving party's case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Importantly, "the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." *Id.* at 247–248 (emphasis in original). While it is true that testimony can create a genuine dispute concerning an issue of material fact, even if it is self-serving and/or uncorroborated, that is not the case where "overwhelming evidence exists that contradicts the self-serving testimony." *See U.S. v. Stein*, 881 F.3d 853, 858-59 (11th Cir. 2018); *Brown v. Public Health Trust of Miami-Dade Cty.*, Case No. 1:18-cv-21457-UU, 2018 WL 10760075, *13 n.3 (S.D. Fla. Dec. 18, 2018); *see also Brock*

*v. Bank of America, N.A.*, Case No. 2:11-cv-00083-RWS, 2012 WL 1802315, at *3 (N.D. Ga. May 17, 2012) ("Given the record as a whole, and the overwhelming evidence contradicting Plaintiff's allegations, no reasonable jury could find in Plaintiff's favor.").

### B.     Franklin's TCPA Claim is Subject to Summary Judgment in CMI's Favor

Franklin alleges that CMI called his Cell Phone, which has a phone number ending in 3733, 82 times between February 13, 2018, and March 18, 2019. (SMF, ¶¶ 13, 15; Compl., ¶ 15; Franklin Tr., 29:8-32:19, Ex. 3 attached thereto.) He alleges all 82 calls violate the TCPA because CMI used an ATDS to call him all 82 times. (SMF, ¶ 17; Compl., ¶ 15; Franklin Tr., 193:17-22.) He alleges only some of the 82 calls also violate the TCPA because CMI used an artificial or prerecorded voice when it called him. (*Id.*)

The TCPA prohibits "any call . . . using any automatic telephone dialing system or an artificial or prerecorded voice" to "to any telephone number assigned to a . . . or cellular telephone service" without the "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A) (emphasis supplied). The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment which has the capacity -- (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* at § at 227(a)(1).

13

The prohibition on using an ATDS applies to cell phones only, not residential landlines. *Id.* at § 227(b)(1)(B). The penalty for violating the TCPA is $500 for each call. *Id.* § 227(b)(3)(B). If a court finds a defendant "willfully" or "knowingly" violated the prohibition, the court may, in its discretion, increase the award for such violation. *Id.* at § 227(b)(3).

Franklin pleads one count against CMI for violating the TCPA, but this single count incorporates two different claims that CMI violated the TCPA, pled in the alternative: (1) CMI called him 82 times using an ATDS; and (2) CMI called him 43 times using an artificial or prerecorded voice. (Compl., ¶¶ 10-15; 18-20.) Neither claim can survive summary judgment, however, because CMI did not use an ATDS or an artificial or prerecorded voice to call Franklin during the relevant time period. Accordingly, summary judgment in CMI's favor is appropriate in this case.

1.    *Franklin's Claims Fail as a Matter of Law Because CMI Did Not Use an ATDS to Call Franklin's Cell Phone*

Franklin alleges CMI called his Cell Phone 82 times between February 13, 2018, and March 18, 2019, and that CMI made all 82 calls using an ATDS. (SMF, ¶¶ 13, 15, 17; Compl., ¶ 15; Franklin Tr., 29:8-32:19, Ex. 3 attached thereto; 193:17-22.) Franklin has not and cannot produce any evidence to support these allegations, however.

The uncontested evidence demonstrates that CMI did not use an ATDS to call Franklin during the relevant time (February 13, 2018, through March 18, 2019). (SMF, ¶ 41; CMI Dec., ¶¶ 23-24.) During that time, live agents[3] manually initiated all communications directed to Franklin. (SMF, ¶¶ 42-44; CMI Dec., ¶¶ 23-26.) As a matter of law, manually dialed calls do not fall within the scope of the TCPA and cannot form the basis of Franklin's claims. *See Carlisle v. Green Tree Servicing, LLC*, Case No. 1:15-CV-2332-TWT, 2016 WL 4011238, at *1 (N.D. Ga. July 27, 2016) (granting summary judgment for the defendant because the defendant offered affirmative and unrebutted evidence the calls were made manually and not by an ATDS, and noting, "[w]here the evidence shows that a call was made manually, summary judgment is appropriate for the Defendant because no reasonable jury could conclude that an ATDS made the call"). Accordingly, Franklin's claims fail.

And even if CMI had used the Aspect Platform to call Franklin's Cell Phone during the time in question, CMI would still be entitled to summary judgment because the Aspect Platform is not an ATDS as a matter of law.

---

[3] The fact that CMI used live agents to call Franklin is proven by Franklin's document production. Franklin produced a recording of six of the 82 phone calls listed on his call log, and all six of the recordings involve a live, human agent. (SMF, ¶¶ 24-25; Franklin Tr., 138:20-139:25; 140:17-141:12; 142:5-143:5; 143:12-144:7; 144:18-145:3; Keeney Dec., ¶¶ 11, 21-23, Ex. C15-19, C21 attached thereto.)

In this Circuit and several others, a dialing platform is not considered an ATDS, and is therefore not subject to the TCPA, if it does not generate random or sequential numbers or if it utilizes human intervention to place a call. *See Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301 (11th Cir. 2020); *see also Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458 (7th Cir. 2020) (agreeing with *Glasser*'s interpretation of the TCPA's ATDS definition in the Seventh Circuit); *Jackson v. Regions Bank*, No. 20-2624, 2021 WL 754836, at *2 (7th Cir. Feb. 26, 2021) (same); *Dominguez v. Yahoo Inc.*, 894 F.3d 116 (3d Cir. 2018) (applying the same conclusion in the Third Circuit).

This precise issue was examined by the Eleventh Circuit last year in *Glasser*. There, the Court closely analyzed the statutory definition of an ATDS: "equipment which has the capacity -- (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The plaintiffs in *Glasser* argued that a device capable of storing telephone numbers and dialing them qualified as an ATDS, even when no random or sequential number generator is used. *Glasser*, 948 F.3d at 1306.

After considering the statutory definition of an ATDS, the Eleventh Circuit rejected plaintiffs' argument. The Court held the phrase "using a random or sequential number generator" applied to both storage <u>and</u> production of telephone

numbers. *Glasser*, 948 F.3d at 1306-12. Accordingly, under *Glasser*, equipment that calls a targeted list of individuals is <u>not</u> an ATDS because the call list was not randomly generated and dialed. *Lucoff v. Navient Sols., LLC,* 981 F.3d 1299, 1300 n.1 (11th Cir. 2020).[4]

The *Glasser* court also held that a device which "requires human intervention," such as one that requires an agent to select a telephone number for dialing, cannot qualify as an ATDS. *Glasser*, 948 F.3d at 1312. There, defendant Hilton's dialing platform required a human to choose a telephone number from the system and select a button labeled "make call," and if that button was not selected,

---

[4] With *Glasser*, the Eleventh Circuit joins the Third and Seventh Circuits in adopting a narrow interpretation of the statutory definition of an ATDS. *See Dominguez*, 894 F.3d at 116; *Gadelhak*, 950 F.3d at 458; *Jackson*, 2021 WL 754836 at *2. But those circuits are presently at odds with the Ninth and Second Circuits' more expansive interpretation of the term. *See Duran v. La Bloom Disco, Inc.*, 955 F.3d 279 (2d Cir. 2020); *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018). The Supreme Court of the United States is set to address the issue in its pending case, *Facebook, Inc. v. Noah Duguid, et al.*, —— U.S. ——, 141 S. Ct. 193, 207 L.Ed.2d 1118 (2020). This Court need not stay the instant case pending an opinion from the Supreme Court, however. As the Seventh Circuit recently noted in *Jackson*, 2021 WL 754836 at *2, n.1: "We anticipate that the Supreme Court will decide whether the phrase 'automatic telephone dialing system' in the [TCPA] encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not 'us[e] a random or sequential number generator' in *Facebook Inc. v. Duguid* []. We have considered whether to hold the present case pending the Court's anticipated decision, but . . . we believe that the best approach here is to decide the case now and for Jackson 'to seek relief in the Supreme Court, should the Justices disagree with the approach we have taken.'" (Internal citations omitted.)

no call would be placed. *Id.* at 1312. The Eleventh Circuit agreed that, because meaningful human interaction was required in that a Hilton employee's choice was required to initiate a call, the system was not an ATDS. *Id.* Accordingly, even if telephone equipment would otherwise qualify as an ATDS, if the system requires human involvement before placing calls, it is <u>not</u> an ATDS under *Glasser*.

*Glasser* is controlling within the Eleventh Circuit and has been recognized as such by the courts within this jurisdiction. *See Lucoff*, 981 F.3d at 1300, n.1; *Hanley v. Tampa Bay Sports and Entm't LLC,* Case No. 8:19-CV-00550, 2020 WL 2517766, at *4 (M.D. Fla. April 23, 2020) (recognizing *Glasser's* narrow interpretation of the ATDS definition as controlling in this Circuit); *Northrup v. Innovative Health Ins. Partners LLC*, Case No. 8:17-cv-1890-T-36JSS, 2020 WL 906199, at *4-6 (M.D. Fla. Feb. 25, 2020) (utilizing the *Glasser* definition to reach the conclusion that the defendants' systems did not qualify as ATDS because they did not have the capacity to randomly or sequentially generate numbers and required human intervention).

Here, it is undisputed that the Aspect Platform does not have the capacity to produce telephone numbers using a random or sequential number generator, and all the calls placed to Franklin's Cell Phone between May 10, 2017, through March 26, 2019, were dialed by a live agent. (SMF, ¶¶ 30, 33; 42; CMI Dec., ¶¶ 17, 23-25;

Hudecek Dec., ¶ 8.)[5] Even if the Agent-Initiated Contact calls were, by some technical circuitry, considered to be initiated through the Aspect Platform, a live human agent reviewed the account in question before dialing the primary phone number associated with the account by hand on a telephone. (SMF, ¶ 42; CMI Dec., ¶¶ 23-25.) This is a fundamentally human process that cannot be considered use of an ATDS, as held by *Glasser. See* 948 F.3d at 1312 (holding that, even if a defendant were to use a system that would otherwise qualify as an ATDS, calls would not be subject to the TCPA if human intervention is required to place calls).

Accordingly, Franklin's claim that CMI used an ATDS to call his Cell Phone is subject to summary judgment.

### 2. *Franklin's Claims Fail as a Matter of Law Because CMI Did Not Use an Artificial or Prerecorded Voice to Call His Cell Phone*

Franklin also alleges CMI violated the TCPA by utilizing an artificial or prerecorded voice when calling his Cell Phone. Franklin, however, failed to produce

---

[5] In fact, federal courts have found that the Aspect Platform, including the specific version used by CMI in the instant case, does not qualify as an ATDS, and calls initiated using the Aspect Platform cannot form the basis of an TCPA claim. *See, e.g., Thompson-Harbach v. USAA Fed. Sav. Bank*, 359 F. Supp. 3d 606, 612, 626 (N.D. Iowa 2019) (granting summary judgment to creditor on plaintiff's TCPA claims and holding Aspect Unified IP, Model No. 7.3 is not an ATDS); *Keyes v. Ocwen Loan Servicing, LLC*, 335 F. Supp. 3d 951, 955, 963 (E.D. Mich. 2018), *dismissed*, No. 18-1989, 2018 WL 6242281 (6th Cir. Oct. 24, 2018) (finding Aspect Unified IP is not an ATDS).

any evidence that CMI used an artificial or prerecorded voice in any of the calls made to his Cell Phone, and CMI's business records demonstrate one was not used.

In addition to prohibiting the use of ATDS, the TCPA also prohibits calls to cell phones made using an "artificial or prerecorded voice" without express consent. 47 U.S.C. § 227(b)(1)(A)(i); *see also Glasser,* 948 F.3d at 1313. To be liable under the "artificial or prerecorded voice" section of the TCPA, a defendant must make a call and an artificial or prerecorded voice must actually play. *Ybarra v. Dish Network, L.L.C.*, 807 F.3d 635, 640 (5th Cir. 2015).

Franklin indicates in his self-generated call log, and alleged in his deposition, that CMI made two types of calls to his Cell Phone that utilized an "automated" voice:

> (1) Calls from CMI that Franklin answered and in which he was greeted by an "automated voice" that instructed him to "stay on the line for a very important message from citimortgage [sic]," where he sometimes later spoke with a live customer service representative; and

> (2) Calls from CMI that Franklin answered and in which he was greeted by an "automated message" stating "please give us a call back about a personal business matter," then the call ended.

(SMF, ¶¶ 21-22; Franklin Tr., 36:13-37:20; 52:20-53:8; 54:1-22; 56:17-57:8; 57:21-58:11; 58:25-59:13; 60:9-20; 61:11-14; 61:22-62:11; 62:19-63:3; 63:14-21; 64:16-22; 65:17-25; 66:19-24; 67:24-68:14; 70:8-20; 71:12-72:4; 72:12-21; 72:25-73:11; 74:3-20; 75:12-18; 76:12-17; 77:3-10; 78:8-20; 79:14-24; 80:18-81:5; 82:15-83:1;

83:7-17; 83:22-84:11; 84:21-85:12; 85:16-25; 86:4-9; 86:17-88:5; 88:10-23; 89:20-90:12; 91:9-25; 92:15-93:12; 93:25-94:13; 94:18-95:4; 95:9-96:13; 97:3-22; 98:15-99:3; 101:17-102:3; 103:13-24; 104:16-22; 105:22-106:9; 106:25-107:16; 108:6-109:7; 109:11-22; 110:11-111:13; 111:20-112:7; 113:4-13; 114:7-115:15; 117:9-118:24; 119:22-120:5; 120:14-121:1; 121:8-25; 122:17-123:14; 124:3-19; 125:3-16; 129:9-130:1; 130:10-23; 131:19-22; 132:1-133:1.) There are 43 such calls identified in his call log. (*Id*.)

Franklin, however, was and is unable to produce any evidence to support these claims. Indeed, Franklin testified the only evidence he has of CMI using an artificial or prerecorded call in a call to his cell phone is his own recollection and speculation. (SMF, ¶ 26; Franklin Tr., 42:21-25; 55:4-6; 55:15-21; 58:20-24; 59:23-60:8; 61:4-10; 64:9-12.; 65:4-12; 66:19-21; 67:12-21; 69:6-15; 71:2-11; 73:18-74:2; 75:19-22; 76:2-8; 79:25-80:2; 80:8-14; 81:15-25; 89:9-19; 90:21-91:5; 92:7-14; 93:13-20; 96:18-97:2; 98:8-14; 99:13-15; 100:11-16; 102:20-103:4; 103:9-12; 104:6-15; 105:12-21; 107:24-108:5; 110:2-10; 112:13-21; 113:22-114:6; 119:9-17; 122:7-16; 123:21-124:2; 124:20-125:2; 127:2-6; 131:10-18; 131:19-22.) Franklin argued that the voices sounded "automated" because the messages were "one-sided conversations" that were "generic." (SMF, ¶ 27; Franklin Tr., 40:41:10; 55:7-11; 58:12-19; 59:19-22; 63:22-64:5; 64:23-65:3; 66:25-67:11; 69:1-5; 70:21-71:1;

73:12-17; 75:23-76:1; 80:3-7; 81:6-12; 89:1-5; 90:13-20; 92:1-6; 93:4-12; 96:11-17; 98:2-7; 99:4-12; 102:8-19; 103:25-104:5; 104:23-105:11; 107:17-23; 109:23-110:1; 112:8-12; 113:14-21; 118:25-119:8; 122:1-6; 123:15-20; 124:17-19; 125:18-24; 130:2-9; 130:24-131:9; 131:19-22.) He has not retained or produced any recordings of any such "automated" voice, and he never had anyone else listen to the voice to suggest an automated voice, as opposed to live speech, was used. (SMF, ¶ 28; Franklin Tr., 55:4-6; 58:7-8; 59:23-24; 60:21-22; 64:6-8; 65:11-12; 69:6-7; 71:2-3; 73:18-20; 81:15-17; 89:14-16; 91:1-2; 92:7-9; 93:13-14; 96:18-20; 99:16-100:10; 102:20-23; 103:9-12; 104:6-8; 105:12-14; 108:2-3; 110:9-10; 112:13-14; 114:1-3; 119:16-17; 125:1-2; 131:14-15; 131:19-22.)

CMI, on the other hand, has produced documentary evidence proving that all the calls made during the relevant time were exclusively from live, human agents that do not use automated or prerecorded voices. (SMF, ¶¶ 41-44.; CMI Dec., ¶¶ 23-26) Additionally, the six recordings Franklin produced actually corroborate CMI's position: none of those recordings evidences the use of an artificial or prerecorded voice. (SMF, ¶ 25; Franklin Tr., 138:20-139:25; 140:17-141:12; 142:5-143:5;

143:12-144:7; 144:18-145:3; Keeney Dec. at ¶¶ 11, 21-23; Ex. C15-19, C21 attached thereto.)[6]

In this circumstance, Franklin's testimony and self-generated call log are not enough to survive summary judgment because there is no genuine issue that CMI used an artificial or prerecorded voice to contact Franklin. Franklin's only evidence in support of that allegation is his own self-serving testimony. While it is true that testimony can create a genuine dispute concerning an issue of material fact, even if it is self-serving and/or uncorroborated, that is not the case where "overwhelming evidence exists that contradicts the self-serving testimony." *See Stein*, 881 F.3d at 858-59; *Brown*, 2018 WL 10760075 at *13 n.3; *see also Brock*, 2012 WL 1802315 at *3.

In fact, to survive summary judgment, Franklin <u>must</u> do more than simply assert under oath that he heard what he considered to be an "automated" voice.

> [T]o survive summary judgment, [the plaintiff] <u>must</u> do more than show some 'metaphysical doubt' as to the material facts. Indeed, 'when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.'

---

[6] It is also a matter of common sense that a call initiated by a human manually dialing Franklin's Cell Phone number would not use an artificial or prerecorded voice.

*Schultz v. American Airlines, Inc.*, 449 F.Supp. 3d 1301, 1310 (S.D. Fla. 2020) (emphasis in original).

Here, CMI's Communication Report blatantly contradicts Franklin's allegations that CMI used artificial or prerecorded messages to call his Cell Phone. Furthermore, none of the recordings Franklin produced is evidence of the use of an artificial or prerecorded voice – and Franklin concedes this fact. (SMF, ¶ 26; Franklin Tr., 42:21-25; 55:4-6; 55:15-21; 58:20-24; 59:23-60:8; 61:4-10; 64:9-12.; 65:4-12; 66:19-21; 67:12-21; 69:6-15; 71:2-11; 73:18-74:2; 75:19-22; 76:2-8; 79:25-80:2; 80:8-14; 81:15-25; 89:9-19; 90:21-91:5; 92:7-14; 93:13-20; 96:18-97:2; 98:8-14; 99:13-15; 100:11-16; 102:20-103:4; 103:9-12; 104:6-15; 105:12-21; 107:24-108:5; 110:2-10; 112:13-21; 113:22-114:6; 119:9-17; 122:7-16; 123:21-124:2; 124:20-125:2; 127:2-6; 131:10-18; 131:19-22.) In short, Franklin cannot create a genuine issue of material fact here, and his claims that CMI called him using an artificial or prerecorded voice are subject to summary judgment.

## IV.  <u>CONCLUSION</u>

At bottom, Franklin has levied allegations against CMI that he simply cannot support with evidence. For this and the foregoing reasons, CMI respectfully requests the Court grant summary judgment in its favor and grant any such further relief as the Court deems fit.

Respectfully submitted on March 31, 2021.

**ADAMS AND REESE LLP**

3424 Peachtree Road NE
Suite 1600
Atlanta, Georgia 30326
Telephone: (470) 427-3700
Facsimile: (404) 238-9674
amyhanna.keeney@arlaw.com

*/s/ Amy L. Hanna Keeney*
Amy L. Hanna Keeney
Georgia Bar No. 509069

*Attorney for Defendant CitiMortgage, Inc.*

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certify that the foregoing has been prepared in Times New Roman 14 font and is in compliance with United States District Court, Northern District of Georgia Local Rule 5.1.

Respectfully submitted this 31st day of March, 2021.

**ADAMS AND REESE LLP**

*/s/ Amy L. Hanna Keeney*

3424 Peachtree Road NE          Amy L. Hanna Keeney
Suite 1600                                     Georgia Bar No. 509069
Atlanta, Georgia 30326
Telephone: (470) 427-3700
Facsimile: (404) 238-9674
amyhanna.keeney@arlaw.com