UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| RICKY R. FRANKLIN, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CITIMORTGAGE, INC., ) <br> ) <br> Defendant. ) <br> ) | Case No. 1:19-CV-3852-MLB <br> Honorable Judge Michael L. Brown <br><br><br><br> JURY TRIAL DEMANDED |

**DEFENDANT'S STATEMENT OF MATERIAL FACTS AS TO WHICH
THERE IS NO GENUINE ISSUE TO BE TRIED**

COMES NOW Defendant CitiMortgage, Inc. ("CMI" or "Defendant"), and, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56.1 of the Local Rules for the United States District Court for the Northern District of Georgia, herewith files its Statement of Material Facts as to Which There is No Genuine Issue to Be Tried (the "SMF"). CMI has filed contemporaneously herewith its Motion for Summary Judgment (the "Motion") against Plaintiff Ricky R. Franklin, wherein it has requested that this Court enter summary judgment in favor of CMI and against Plaintiff on all counts raised in his Complaint.

CMI sets forth the material facts that support its Motion as follows:

A. **Franklin's Relationship to CMI**

1. Franklin obtained a mortgage loan in 2003, and CMI serviced that mortgage loan (the "Loan") for almost 12 years: from October 22, 2007, through March 31, 2019. (Declaration of Kyle Ramey ("CMI Dec."), attached hereto as **Exhibit A**, at ¶¶ 3, 7, 28.)

2. While CMI serviced the Loan, it identified the Loan within its records by assigning to it a ten-digit number ending in 0060. (CMI Dec., ¶ 3.)

3. On or about November 2, 2015, Franklin sued CMI in this Court and alleged CMI committed various wrongdoings related to the Loan (the "2015 Lawsuit"). (CMI Dec., ¶ 8.)

4. In part due to this litigation, CMI marked the Loan in its records with a "cease and desist" code. (CMI Dec., ¶ 9.)

5. When the "cease and desist" code is applied to a loan, the code removes that loan from all phone campaigns initiated by CMI. (CMI Dec., ¶ 10.)

6. The 2015 Lawsuit was resolved on or about November 22, 2016. (CMI Dec., ¶ 11.)

7. On or about March 28, 2017, CMI removed the "cease and desist" code on the Loan. (CMI Dec., ¶ 12.)

8. On or about March 27, 2017, CMI sent Franklin a letter asking him to update his contact information now that the "cease and desist" code on the Loan had been removed. (CMI Dec., ¶ 13.)

9. On or before May 2, 2017, Franklin returned the letter to CMI (the "Letter") and specifically identified a phone number ending in 3733 as both his home phone number and his other/alternate phone number. (CMI Dec., ¶ 14, Ex. A2 attached thereto; Deposition of Ricky R. Franklin conducted December 15, 2020, a true and correct transcript of which is attached hereto as **Exhibit B** ("Franklin Tr."), 187:19-190:11, Ex. 20 attached thereto.)

10. Also in the Letter, Franklin gave CMI express written consent to contact his cell phone, and Franklin agreed to receive from CMI and its service providers "calls and messages such as prerecorded messages, calls and messages from automated dialing systems, and text messages." (CMI Dec., ¶ 15.)

11. Franklin contends he revoked this consent numerous times, though he could not identify specific dates on which he revoked consent during his deposition. (Franklin Tr., 144:8-13; 145:4-11; 184:22-185:6; 190:4-11.)

12. The earliest revocation of the consent Franklin gave in the Letter occurred on February 13, 2018. (Franklin Tr., 187:5-11; 189:18-190:11.)

## B. Franklin's Allegations and Evidence of Wrongdoing

13. Franklin alleges that, beginning on February 13, 2018, CMI began calling his cell phone using an "automatic telephone dialing system" or an artificial or prerecorded voice, in violation of the Telephone Consumer Protection Act ("TCPA," 47 U.S.C. § 227). (Compl., ¶ 15.)

14. Franklin withdrew his consent to receive such contact from CMI as early as February 13, 2018. (Franklin Tr., 187:5-11; 189:18-190:11.)

15. In support of his allegations, Franklin is producing a log of 82 calls CMI made to his cell phone, which has a phone number ending in 3733 ("Franklin's Cell Phone" or "his Cell Phone"), between February 13, 2018, and March 18, 2019. (Franklin Tr., 29:8-32:19, Ex. 3 attached thereto.)

16. Franklin created the call log himself. (Franklin Tr., 29:8-32:19.)

17. Franklin alleges CMI made all 82 of these calls using an automatic telephone dialing system ("ATDS"), but only some of the calls involved the use of an artificial or prerecorded voice. (Compl., ¶ 15; Franklin Tr., 193:17-22.)

18. Franklin testified that 81 of the 82 calls listed on his call log fall into one of four categories:

　　1) calls from CMI that he answered and in which he was greeted by an "automated voice" that instructed him to "stay on the line for a very important message from citimortgage [sic]," where he sometimes later spoke with a live customer service representative;

　　2) calls from CMI that he answered and in which he was greeted by an "automated message" stating "please give us a call back about a personal business matter," then the call ended;

　　3) calls from CMI which he answered and in which he spoke to a live customer service representative (no "automated message" used); and

　　4) calls from CMI he did not answer and that did not result in any voice message.

(Franklin Tr., 136:1-137:11.)

19. The only call on Franklin's call log that does not fit into these four categories is entry #55, which Franklin concedes was a voicemail left by a human being. (Franklin Tr., 133:7-11, 137:8-11.)

20. Entry #5 on the call log is erroneous; it is a continuation of entry #4 and should not have been a separate entry. (Franklin Tr., 55:22-56:9.)

21. For clarity, the entries in Franklin's call log can be summarized as follows:

|   | **Category description** | **Entries corresponding to Category** | **Total number of calls in Category** |
|---|---|---|---|
| 1 | Calls from CMI that Franklin answered and in which he was greeted by an "automated voice" that instructed him to "stay on the line for a very important message from citimortgage [sic]," where he sometimes later spoke with a live customer service representative | 1, 4, 7, 8, 9, 12, 13, 14, 40, 41, 42, 58, 61, 65, 66, 68, 72, 73, 74, 76, 79, 81 | 22 |
| 2 | Calls from CMI that Franklin answered and in which he was greeted by an "automated message" stating "please give us a call back about a personal business matter," then the call ended | 15, 16, 19, 20, 23, 24, 32, 33, 34, 35, 39, 43, 44, 45, 47, 49, 52, 62, 70, 71, 83 | 21 |
| 3 | Calls from CMI that Franklin answered and in which he spoke to a live customer service representative (no "automated message" used) | 6, 10, 11, 25, 26, 28, 29, 30, 31, 36, 37, 38, 48, 50, 51, 53, 60 | 17 |
| 4 | Calls from CMI that Franklin did not answer and that did not result in any voice message | 2, 3, 17, 18, 21, 22, 27, 46, 54, 56, 57, 59, 63, 64, 67, 69, 75, 77, 78, 80, 82 | 21 |
|   |   | *Total calls:* | *81* |

(Franklin Tr., 36:13-37:20; 52:20-53:8; 54:1-22; 56:17-57:8; 57:21-58:11; 58:25-59:13; 60:9-20; 61:11-14; 61:22-62:11; 62:19-63:3; 63:14-21; 64:16-22; 65:17-25; 66:19-24; 67:24-68:14; 70:8-20; 71:12-72:4; 72:12-21; 72:25-73:11; 74:3-20; 75:12-18; 76:12-17; 77:3-10; 78:8-20; 79:14-24; 80:18-81:5; 82:15-83:1; 83:7-17; 83:22-84:11; 84:21-85:12;

    85:16-25; 86:4-9; 86:17-88:5; 88:10-23; 89:20-90:12; 91:9-25; 92:15-93:12; 93:25-94:13; 94:18-95:4; 95:9-96:13; 97:3-22; 98:15-99:3; 101:17-102:3; 103:13-24; 104:16-22; 105:22-106:9; 106:25-107:16; 108:6-109:7; 109:11-22; 110:11-111:13; 111:20-112:7; 113:4-13; 114:7-115:15; 117:9-118:24; 119:22-120:5; 120:14-121:1; 121:8-25; 122:17-123:14; 124:3-19; 125:3-16; 129:9-130:1; 130:10-23; 131:19-22; 132:1-133:1.)

22. Only 43 of the 82 calls involved the use of an artificial or prerecorded voice (Categories 1 and 2 above). (Franklin Tr., 36:13-37:20; 52:20-53:8; 54:1-22; 56:17-57:8; 57:21-58:11; 58:25-59:13; 60:9-20; 61:11-14; 61:22-62:11; 62:19-63:3; 63:14-21; 64:16-22; 65:17-25; 66:19-24; 67:24-68:14; 70:8-20; 71:12-72:4; 72:12-21; 72:25-73:11; 74:3-20; 75:12-18; 76:12-17; 77:3-10; 78:8-20; 79:14-24; 80:18-81:5; 82:15-83:1; 83:7-17; 83:22-84:11; 84:21-85:12; 85:16-25; 86:4-9; 86:17-88:5; 88:10-23; 89:20-90:12; 91:9-25; 92:15-93:12; 93:25-94:13; 94:18-95:4; 95:9-96:13; 97:3-22; 98:15-99:3; 101:17-102:3; 103:13-24; 104:16-22; 105:22-106:9; 106:25-107:16; 108:6-109:7; 109:11-22; 110:11-111:13; 111:20-112:7; 113:4-13; 114:7-115:15; 117:9-118:24; 119:22-120:5;

120:14-121:1; 121:8-25; 122:17-123:14; 124:3-19; 125:3-16; 129:9-130:1; 130:10-23; 131:19-22; 132:1-133:1.

23. The remaining 39 calls did not involve the use of an artificial or prerecorded voice but, according to Franklin, those calls were made by CMI using an ATDS. (Franklin Tr., 193:17-22.)

24. Additionally, Franklin produced a recording of six of the 82 phone calls listed on his log. (Franklin Tr., 138:20-139:25; 140:17-141:12; 142:5-143:5; 143:12-144:7; 144:18-145:3; Declaration of Amy L. Hanna Keeney ("Keeney Dec."), attached hereto as **Exhibit C**, at ¶¶ 11, 21-23, Ex. C15-19, C21 attached thereto.)

25. All six of the recordings involve a live, human agent of CMI. None of the six recordings evidences the use of an artificial or prerecorded voice. (Franklin Tr., 138:20-139:25; 140:17-141:12; 142:5-143:5; 143:12-144:7; 144:18-145:3; Keeney Dec. at ¶¶ 11, 21-23; Ex. C15-19, C21 attached thereto.)

26. Franklin does not have any evidence of CMI using an artificial or prerecorded voice in a call to his cell phone listed in Categories 1 and 2 of the table in Paragraph 21, other than his own recollection of it occurring. (Franklin Tr., 42:21-25; 55:4-6; 55:15-21; 58:20-24; 59:23-

60:8; 61:4-10; 64:9-12.; 65:4-12; 66:19-21; 67:12-21; 69:6-15; 71:2-11; 73:18-74:2; 75:19-22; 76:2-8; 79:25-80:2; 80:8-14; 81:15-25; 89:9-19; 90:21-91:5; 92:7-14; 93:13-20; 96:18-97:2; 98:8-14; 99:13-15; 100:11-16; 102:20-103:4; 103:9-12; 104:6-15; 105:12-21; 107:24-108:5; 110:2-10; 112:13-21; 113:22-114:6; 119:9-17; 122:7-16; 123:21-124:2; 124:20-125:2; 127:2-6; 131:10-18; 131:19-22.)

27. Franklin concluded that the voices were "automated" because the messages were "one-sided conversations" that were "generic." (Franklin Tr., 40:41:10; 55:7-11; 58:12-19; 59:19-22; 63:22-64:5; 64:23-65:3; 66:25-67:11; 69:1-5; 70:21-71:1; 73:12-17; 75:23-76:1; 80:3-7; 81:6-12; 89:1-5; 90:13-20; 92:1-6; 93:4-12; 96:11-17; 98:2-7; 99:4-12; 102:8-19; 103:25-104:5; 104:23-105:11; 107:17-23; 109:23-110:1; 112:8-12; 113:14-21; 118:25-119:8; 122:1-6; 123:15-20; 124:17-19; 125:18-24; 130:2-9; 130:24-131:9; 131:19-22.)

28. Franklin has not retained or produced any recordings of any such "automated" voice, and he has never had anyone listen to the voice and confirm that it is an automated voice as opposed to live speech. (Franklin Tr., 55:4-6; 58:7-8; 59:23-24; 60:21-22; 64:6-8; 65:11-12; 69:6-7; 71:2-3; 73:18-20; 81:15-17; 89:14-16; 91:1-2; 92:7-9; 93:13-14; 96:18-20;

> 99:16-100:10; 102:20-23; 103:9-12; 104:6-8; 105:12-14; 108:2-3; 110:9-10; 112:13-14; 114:1-3; 119:16-17; 125:1-2; 131:14-15; 131:19-22.)

### C. CMI's Telephone Platform

29. Between March 30, 2017, and March 26, 2019, at various times CMI used the Aspect Unified IP 7.3 dialing platform ("Aspect Platform") to initiate communications to its borrowers. (CMI Dec., ¶ 16.)

30. The Aspect Platform only initiates communications to telephone numbers uploaded by CMI. The Aspect Platform does not generate or initiate communications using a random or sequential number generator. (CMI Dec., ¶ 17; Declaration of Don Hudecek ("Hudecek Dec."), attached hereto as **Exhibit D**, at ¶ 8.)

31. Aspect Software, Inc. ("Aspect") is the supplier of the Aspect Platform for CMI. (Hudecek Dec., ¶¶ 4-6.)

32. The Aspect Platform is a contact center system that supports both inbound and outbound engagement. The Aspect Platform includes a dialer component in order to support outbound engagements. (Hudecek Dec., ¶ 5.)

33. None of the versions of Aspect's Unified IP, including the Aspect Platform, have the capacity to produce phone numbers using a random or sequential number generator. (Hudecek Dec., ¶ 8.)

34. The only telephone numbers that the Aspect Platform can dial are those inputted into an Aspect customer's database and downloaded by the customer into the Aspect Platform. (Hudecek Dec., ¶ 8.)

35. Aspect is unaware of any application that would alter the Aspect Platform's behavior such that the Aspect Platform would be capable of producing phone number using a random or sequential number generator. (Hudecek Dec., ¶ 8.)

**D. Communications between CMI and Franklin**

36. CMI maintains a record of each time it contacts any borrower on any loan it services, whether that contact occurred by using the Aspect Platform or by other means, such as a direct, agent-initiated phone call. (CMI Dec., ¶ 18.)

37. A report of all the calls CMI made to Franklin regarding the Loan between March 30, 2017, and March 26, 2019, is maintained in CMI's business records and is often referred to as the "Communication Report." (CMI Dec., ¶¶ 19, 20.)

38. The Communication Report for the Loan includes not only calls to Franklin made by CMI using the Aspect Platform, but all calls made to Franklin concerning the Loan – regardless of method – between March 30, 2017, and March 26, 2019. (CMI Dec., ¶ 20.)

39. The only calls made to Franklin using the Aspect Platform occurred between March 30, 3017, and April 7, 2017. (CMI Dec., ¶¶ 21, 22, Ex. A3 attached thereto.)

40. CMI did not make the calls in that time frame (March 30, 3017, to April 7, 2017) to Franklin's Cell Phone. Those calls were made to a different phone number ending in 2542. (CMI Dec., ¶ 22.)

### E. CMI'S Use of Agent-Initiated Contact to Call Franklin's Cell Phone

41. CMI did not use the Aspect Platform to contact Franklin's Cell Phone between May 10, 2017, and March 26, 2019. (CMI Dec., ¶¶ 23-25.)

42. Rather, every call made to Franklin's Cell Phone between May 10, 2017, and March 26, 2019, was an "Agent-Initiated Contact," meaning a live, human agent reviewed the account in question and initiates the phone call by dialing the primary phone number associated on the account by hand on a telephone. (CMI Dec., ¶¶ 23-25.)

43. When an Agent-Initiated Contact call is connected, the live agent speaks directly to the call's recipient. (CMI Dec., ¶ 24.)

44. There is no artificial or prerecorded voice used in any part of an Agent-Initiated Contact. (CMI Dec., ¶¶ 24, 26.)

Respectfully submitted this 31st day of March, 2021.

**ADAMS AND REESE LLP**

*/s/ Amy L. Hanna Keeney*

3424 Peachtree Road NE
Suite 1600
Atlanta, Georgia 30326
Telephone: (470) 427-3700
Facsimile: (404) 238-9674
amyhanna.keeney@arlaw.com

Amy L. Hanna Keeney
Georgia Bar No. 509069

## **CERTIFICATE OF COMPLIANCE**

The undersigned hereby certify that the foregoing has been prepared in Times New Roman 14 font and is in compliance with United States District Court, Northern District of Georgia Local Rule 5.1.

Respectfully submitted this 31st day of March, 2021.

                                        **ADAMS AND REESE LLP**

                                      */s/ Amy L. Hanna Keeney*

3424 Peachtree Road NE         Amy L. Hanna Keeney
Suite 1600                                 Georgia Bar No. 509069
Atlanta, Georgia 30326
Telephone: (470) 427-3700
Facsimile: (404) 238-9674
amyhanna.keeney@arlaw.com