**IN UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| RICKY R. FRANKLIN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:19-CV-3852-MLB |
| | ) | Honorable Judge Michael L. |
| v. | ) | Brown |
| | ) | |
| CITIMORTGAGE, INC., | ) | |
| | ) | |
| Defendant. | ) | JURY TRIAL DEMANDED |
| | ) | |

## PLAINTIFF'S BRIEF AND MEMORANDUM OF LAW IN SUPPORT OF HIS OPPOSITION TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT

Defendant Citimortgage, Inc., (hereinafter, "CMI" or "Defendant") have filed

a motion for summary judgment and Plaintiff now timely responds and states as

follows:

### I.  INTRODUCTION

This is a case involving violations of the Telephone Consumer Protection Act

("TCPA") 47 U.S.C. § 227 et seq, which prohibits the use of auto-dialers to make

any call to a wireless number in the absence of an emergency or the prior express

consent of the called party.  Using automated equipment, with the same system and

numbers showing on the Plaintiffs cellphone for each and every call, Defendant

CMI contacted the Plaintiff at least eighty (82) times by means of artificial pre-recorded voice messages to a cellphone or pager in violation of 47 U.S.C. 227(b)(1)(A)(iii). These violations committed by the Defendant presents a genuine issue of material fact and are a direct violation of the TCPA.  As such, the Defendants motion for summary judgment must be denied as a matter of law.

## II. RESPONSE TO DEFENDANT'S BRIEF STATEMENT OF FACTS

**A.** It is disputed by Plaintiff when and if CMI began servicing the Plaintiffs loan in 2007, In previous lawsuits, the Defendant's produced affidavits stating that they begin servicing the Plaintiffs loan in 2003. (**Exhibit A, Statement of Disputed Facts, "SDF" #1) (Exhibit B, Franklin Dec¶ 4)**  It is disputed that Plaintiff gave consent to be called using an auto-dialer or automated/pre-recorded voice messages to his cellphone.  In fact, on the very first call to the Plaintiff on February 13, 2018, Plaintiff revoked consent to be called by the Defendants.  In fact, Plaintiff has revoked consent more than fifth-teen (15) times between February 2018 and March 2019.  **(SDF #11) Franklin Dec¶ 8, 12)**

**B.** Plaintiff disputes that he can provide evidence that the Defendant used an automated /pre-recorded voice message to contact the Plaintiff or more than half the phone calls that he answered.  Plaintiff produced precise call logs based on personal knowledge and firsthand experience at the time it happened dating back to 2018.  Plaintiff did not only revoke consent to be called after the very first phone

2

call on February13th, 2018, but Plaintiff was greeted by an automated voice

recording (non live person) on more than half of the calls on the following dates:

**February 13, 18, 21, 2018; March 15, 17, 20, 23, 24, 24, 26, 27, 2018; April 18, 19, 24, 25, 2018; June 1, 2, 4, 5, 2018; July 20, 24, 25, 31, 2018; August 3, 15, 16, 23, 30, 2018; September 27, 2018; October 31, 2018; November 21, 23, 2018; December 7, 8, 2018; January 10, 21, 24, 26, 29, 31, 2019; February 28, 2019; March 6, 18, 2019**

There are a total of 43 documented automated recordings that Plaintiff was greeted

with when he answered his cellphone.  **(SDF # 17, 26)( Franklin Dec¶ 8, 10)**

**(Exhibit C, Call Log 1-82)**

**C.** It is disputed what type of system that Defendant CMI used in March of 2017,

because inter-alia, Plaintiff does not have any documented calls from the

Defendant in the year of 2017.  Plaintiff did not start receiving calls from

Defendant CMI until February of 2018 up until March 2019.  **(SDF**

**# 29, 30, 33,) Franklin Dec¶5,6)**

**D.** It is disputed what type of system the Defendant CMI used to call the Plaintiff,

because as stated above, Plaintiff did not receive any calls in 2017 from the

Defendant.  It is further disputed that the Communications report produced by the

Defendant is extremely inaccurate, because at no time did Plaintiff indicate that he

owned a phone number ending in 2542 where he wished be contacted by the

Defendant.  In short, Defendants report claims to have called Plaintiff with a

number that he did not own.  **(SDF# 29,30,33, 39, 40) Franklin Dec¶ 5,7,**

3

**E.** It is disputed that every call made by the Defendant to the Plaintiff was made or agent initiated by a human-being manually. The Defendant's would have the Court or believe that a call initiated outside the United States in the Philippines, was manually dialed thru the State of Arizona area codes. **(SDF# 42) (Statement of additional disputed facts "SADF"# 1, 2)Franklin Dec¶8,14)**

### III. ARGUMENT AND AUTHORITY

#### A. Legal Standard

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) The Court must consider all evidence in the light most favorable to the non-moving party, and "resolve all reasonable doubts in favor of the non-moving party." *Earley v. Champion Int'l*, 907F.2d 1077, 1080 (11th Cir. 1990).

A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).* The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *Celotex Corp. v Catrett, 477 U.S. 317, 323 (1986).* Summary judgment will not lie if the dispute about a material fact is genuine. At the summary judgment stage, the trial judge's function is not himself to weigh the

4

evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Id. at 249*.

## B. Defendants Systems Uses Automated And Pre-Recorded Messages

On February 13, 2018, Plaintiff was greeted by an automated message that stated "please stay on the line for a very important message from citimortgage" On this same phone call, Plaintiff informed the representative that "he did not want to receive phone calls on his cellphone". *Id. at Ins #1[1]*. On other dates, Plaintiff was greeted with an automated message as stated above, or an automated message that stated "please give us a call back about a personal business matter". The following calls occurred on: February 21; March 15, 17, 20, 23, 24, 24, 26, 27; April 18, 19, 24, 25; June 1, 2, 4, 5; July 20, 24, 25, 31; August 3, 15, 16, 23, 30; September 27; October 31; November 21, 23; December 7, 8 all in 2018; January 10, 21, 24, 26, 29; February 28; March 6, 18, 2019 *[(Id. at Ins 4, 7, 8, 9, 12, 13, 14, 15, 16, 19, 20, 23, 24, 32, 33, 34, 35, 39, 40, 41, 42, 43, 44, 45, 47, 49, 52, 58, 61, 62, 65, 66, 68, 71, 72, 73, 74, 76, 79, 81, 83, 7, 18, 22, 35, 38, 39,)]* The use of automated messages is a direct violation of the act under the TCPA. The supplemental briefing that the Defendants rely on from the U.S Supreme Courts supports this fact. In *Facebook Inc. v. Duguid* the high Court re-affirmed that artificial or pre-recorded messages are prohibited.

---

[1]All citations to Exhibit C, the phone log, pin to cite to the line numbers "Ins" found therin

(The statute separately prohibits calls using "an artificial or prerecorded voice" to various types of phone lines, including home phones and cell phones, unless an exception applies. See 47 U. S. C. §§227(b)(1)(A) and (B). Our decision does not affect that prohibition.) 141 S. Ct. 193, 207 L. Ed. 2d 1118 (2020) *(Id. at p. 12)See also....Glasser v. Hilton Grand Vacations Co., LLC*, Op. at 22 (11th Cir. 2020). (Remember that using recordings to call someone without her consent is an independent basis for liability under the Act. 47 U.S.C. § 227(b)(1)(A).)  Plaintiff has received more than 43 calls that were greeted by a automated and or pre-recorded message in violation of the statute and 21 other calls that were not answered by the Plaintiff.

### i.  *A system that can leave automated messages has the capacity to violate the TCPA*

It has been well established that a system that has the capacity to dial numbers using a random or sequentially number generator is a violation of the TCPA even if that system is not used all the time.  For example, if a person receives 100 calls from a dialing system and one of those calls leaves an automated voice message, then that system and the entire 100 calls are in violation of the TCPA because of the capacity to do so.   As far back as 2009, for instance, the Ninth Circuit Court of Appeals has held that it is the ***capacity*** of the system to perform the statutory functionalities–**and not the *usage*** of those functionalities–that triggers the TCPA. See *Satterfield v. Simon & Schuster, Inc*., 569 F. 3d 946 (9th Cir. 2009). This

decision has been followed repeatedly by district courts across the country. As recently as 2020, the 11th circuit has agreed with this analysis.  See...*Glasser v. Hilton Grand Vacations Co., LLC*, (11th Cir. 2020) *(Id. at p. 8)* (The key reality is that it is difficult to think of dialing equipment that can "produce" telephone numbers and "dial" them but lacks the "capacity" to "store" them. Somewhere between identification and production, storage occurs. In that way, a device "stores" telephone numbers "using" a random or sequential number generator because the device employs the number generator as part of the storage process)

The system that the Defendant uses has the capacity to dial numbers using a random or sequentially number generator and dial the numbers, and therefore all 82 calls are in violation of the TCPA statute and summary judgment must be denied.

### ii. *The Supreme Court wiped away any type of human intervention test for automated telephone dialing systems (ATDS)*

The Defendants attempt to claim that each call placed to Plaintiff was done by a by hand and initiated by a human is nonsensical.  Never the less, one day after filing its summary judgement motion the U. S. Supreme Court in *Facebook v Dugiud* eliminated any type of human intervention test.  The Court agrees and expressly refused to adopt any "human intervention" test when assessing the TCPA's ATDS definition. "All devices require some human intervention, whether

7

it takes the form of programming a cell phone to respond automatically to texts received while in "do not disturb" mode or commanding a computer program to produce and dial phone numbers at random. We decline to interpret the TCPA as requiring such a difficult line-drawing exercise around how much automation is too much." *(Id. at p.9, n.6.)* How the Defendants chose to use their system is subject to the TCPA and summary judgment must be denied.

## C. Plaintiffs Presents Sufficient Evidence To Defeat Summary Judgment

Plaintiff provides a precise call log that refutes the Defendants communication report.  Plaintiffs call log is based on personal knowledge and is annotated first had by the Plaintiff himself.  (See Exhibit C)Furthermore, Plaintiff is competent to testify on the matters stated in the Affidavit in Exhibit B.   *United States v. Stein,* 2018 WL 635960 (11th Cir. Jan 31, 2018) **(en banc)** (The fact that plaintiff's claims rely on "self-serving" deposition testimony is no defect at the summary judgment stage) Quoting...Fed R. Civ. P. 56 (This rule does not prohibit an affidavit from being self-serving or mandates that assertions in the affidavit be corroborated by other evidence)   *I.d. Opinion, p. 7  See Also...'" Marr v. Bank of Am., N.A.,* 662 F.3d 963, 968 (7th Cir. 2011) (quoting *Montgomery v. Am. Airlines, Inc.,* 626 F.3d 382, 389 (7th Cir. 2010) (The fact that plaintiff's claims rely on "self-serving" deposition testimony is no defect at the summary judgment stage; even "`uncorroborated, self-serving testimony, if based on personal knowledge or

8

firsthand experience, may prevent summary judgment against the non-moving party, as such testimony can be evidence of disputed material facts.')

Plaintiff has evidence that automated calls occurred, the Defendant claims to have evidence that it did not use automated messages. *Id.* This is a factual dispute for the jury! (the difference between debt collector's recordings and debtor's deposition testimony was a question of fact for a jury). That is a classic factual dispute for the jury. *See... Marr v. Bank of America, N.A.*, 662 F.3d 963, 968 (7th Cir. 2011) *See Also...Garmon v. Nat'l R.R. Passenger Corp.*, 844 F.3d 307, 315 (1st Cir. 2016). Based on this factual dispute alone, the defendant's summary judgment must be denied.

**D. Plaintiff Revoked Consent To Be Contacted**

Plaintiffs told the represented on the very first call to his cellphone that "he did not want to receive phone calls on his cellphone" Plaintiff revoked consent to contacted on his cellphone on February 13, 2018@ 1648hrs.  In fact Plaintiff revoked consent on more than 15 different occasions on the following dates:

**February 13, 21, March 20, 21, 22; April 26, 27; Mary 22, 31; July 19, 25, 31; October 31; November 21; 2018 January 10, 2019**

**(Statement of Disputed Facts, "SDF" #11) Franklin Dec¶8,12)**

It is well established in this circuit that consumers may revoke consent in writing or orally. *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir.

2014) *See Also... Gager v. Dell Fin. Servs., LLC,* 727 F.3d 265, 270 (3d Cir. 2013*);*

(The TCPA affords Gager the right to revoke her prior express consent to be

contacted on her cellular phone orally or in writing)  See Also...*Rules and*

*Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG

Docket No. 02-278, Declaratory Ruling and Order, FCC Rcd 7993- 7998, (2015)

(The Order clarifies that consumers may revoke consent through any reasonable

method, including orally. Consumers have a right to opt-out – and companies

cannot dictate how they do so. )  After revoking consent on more than 15

occasions, the Defendant contacted the Plaintiff without consent in violation of the

Act.  It is also for this reason that the defendants summary judgment must be

denied.

## V. CONCLUSION

For the reasons stated above, the defendant's motion for summary judgment

must be denied as a matter of law.

Dated: April 19th, 2021                                   Respectfully submitted,

                                                            Ricky R. Franklin
                                                            708 Brambling Way
                                                            Stockbridge, GA 30281
                                                            678-650-3733
                                                            rrfrank12@hotmail.com

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was sent via First

Class Mail on April 19th, 2021, to Defendant's Counsel listed below:


**ADAMS AND REESE LLP**

**AMY L. HANNA KEENEY**

**3424 Peachtree Road N.E., Suite 1600**

**Atlanta, Georgia 30326**

**amyhannakeeney@arlaw.com**

**COUNSEL FOR DEFENDANT Citimortgage, Inc.**


Plaintiff, Pro-Se

Ricky R. Franklin

708 Brambling Way

Stockbridge, GA 30281

# EXHIBIT A

# IN UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| RICKY R. FRANKLIN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:19-CV-3852-MLB |
| | ) | Honorable Judge Michael L. |
| v. | ) | Brown |
| | ) | |
| CITIMORTGAGE, INC., | ) | |
| | ) | |
| Defendant. | ) | JURY TRIAL DEMANDED |
| | ) | |

## PLAINTIFF'S LOCAL RULE 56.1(B) (2) RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND LOCAL RULE 56.1(B)(3) STATEMENT OF ADDITIONAL FACTS REQUIRING THE DENIAL OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**Franklin's Relationship to CMI**

1. Franklin obtained a mortgage loan in 2003, and CMI serviced that mortgage loan (the "Loan") for almost 12 years: from October 22, 2007, through March 31, 2019. (Declaration of Kyle Ramey ("CMI Dec."), attached hereto as **Exhibit A**, at ¶¶ 3, 7, 28.)

**Response: Disputed.** In a 2015/2016 lawsuit the Defendant informed the Plaintiff that they began servicing his loan in 2003. *Citimortgage Inc vs Franklin* No. 1:15-cv-04396-LMM (Id. at p.13.) (2016) **(Franklin Dec¶ 4)**

2.  While CMI serviced the Loan, it identified the Loan within its records by assigning to it a ten-digit number ending in 0060. (CMI Dec., ¶ 3.)

**Response:  Undisputed.**

3.  On or about November 2, 2015, Franklin sued CMI in this Court and alleged CMI committed various wrongdoings related to the Loan (the "2015 Lawsuit"). (CMI Dec., ¶ 8.)

**Response:  Undisputed.**

4.  In part due to this litigation, CMI marked the Loan in its records with a "cease and desist" code. (CMI Dec., ¶ 9.)

**Response:  Undisputed.**

5.  When the "cease and desist" code is applied to a loan, the code removes that loan from all phone campaigns initiated by CMI. (CMI Dec., ¶ 10.)

**Response:  Undisputed.**

6.  The 2015 Lawsuit was resolved on or about November 22, 2016. (CMI Dec., ¶ 11.)

**Response:  Undisputed**

2

7.  On or about March 28, 2017, CMI removed the "cease and desist" code on the Loan. (CMI Dec., ¶ 12.)

**Response:  Disputed:**  Plaintiff has never informed Defendant CMI to remove his requested "cease and desist" status.   **(Franklin Dec¶ 6)**

8.  On or about March 27, 2017, CMI sent Franklin a letter asking him to update his contact information now that the "cease and desist" code on the Loan had been removed. (CMI Dec., ¶ 13.)

**Response:  Disputed:**  Plaintiff has never requested to remove his 'cease and desist status as part of this lawsuit or any other lawsuits.  **(Franklin Dec¶ 6)**

9.  On or before May 2, 2017, Franklin returned the letter to CMI (the "Letter") and specifically identified a phone number ending in 3733 as both his home phone number and his other/alternate phone number. (CMI Dec., ¶ 14, Ex. A2 attached thereto; Deposition of Ricky R. Franklin conducted December 15, 2020, a true and correct transcript of which is attached hereto as **Exhibit B** ("Franklin Tr."), 187:19-190:11, Ex. 20 attached thereto.)

**Response:  Undisputed**

10. Also in the Letter, Franklin gave CMI express written consent to contact his cell phone, and Franklin agreed to receive from CMI and its service providers "calls

3

and messages such as prerecorded messages, calls and messages from automated dialing systems, and text messages." (CMI Dec., ¶ 15.)

**Response:  Undisputed.**  To the extent Plaintiff updated his contact information.

11.Franklin contends he revoked this consent numerous times, though he could not identify specific dates on which he revoked consent during his

deposition. (Franklin Tr., 144:8-13; 145:4-11; 184:22-185:6; 190:4-11.)

**Response:  Disputed**:  Plaintiff revoked consent on the very first called that occurred on February 13, 2018.  Additionally, Plaintiff revoked consent more than 15 times on different occasions.  (Franklin Dec¶8, 12) Exhibit C *(Id. at Ins 1, 4, 9, 10, 11, 25, 26, 30, 31, 38, 41, 42, 58, 61, 68,)]*

12.The earliest revocation of the consent Franklin gave in the Letter occurred on February 13, 2018. (Franklin Tr., 187:5-11; 189:18-190:11.)

**Response:  Undisputed:** To the extent that Plaintiff orally revoked consent over the telephone.  (Franklin Dec¶ 8) Exhibit C (Id. at Ins 1)

**B. Franklin's Allegations and Evidence of Wrongdoing**

13.Franklin alleges that, beginning on February 13, 2018, CMI began calling his cell phone using an "automatic telephone dialing system" or an artificial or prerecorded voice, in violation of the Telephone Consumer Protection Act ("TCPA," 47 U.S.C. § 227). (Compl., ¶ 15.)

4

**Response:  Undisputed**: To the extent Plaintiff documented a call on February 13, 2018 that used an automated greeting that derived from the country of the Philippines.   (Franklin Dec¶8,) Exhibit C *(Id. at Ins 1)*

14. Franklin withdrew his consent to receive such contact from CMI as early as February 13, 2018. (Franklin Tr., 187:5-11; 189:18-190:11.)

**Response:  Undisputed**:  To the extent that Plaintiff revoked consent on this date and 15 more times after this date.  (Franklin Dec¶8, 12) Exhibit C *(Id. at Ins 1, 4, 9, 10, 11, 25, 26, 30, 31, 38, 41, 42, 58, 61, 68,)*

15.In support of his allegations, Franklin is producing a log of 82 calls CMI made to his cell phone, which has a phone number ending in 3733 ("Franklin's Cell Phone" or "his Cell Phone"), between February 13, 2018, and March 18, 2019. (Franklin Tr., 29:8-32:19, Ex. 3 attached thereto.)

**Response:  Undisputed.**

16.Franklin created the call log himself. (Franklin Tr., 29:8-32:19.)

**Response:  Undisputed.** To the extent that Plaintiff personally documented every call at or about the time the call was received on his cellphone.

17.Franklin alleges CMI made all 82 of these calls using an automatic telephone dialing system ("ATDS"), but only some of the calls involved the use of an artificial or prerecorded voice. (Compl., ¶ 15; Franklin Tr.,193:17-22.)

5

**Response: Disputed:** 43 of the calls used an automatic greeting/recording when it called Plaintiffs cellphone. Additionally, 21 of the calls were not answered by the Plaintiff, and six calls Plaintiff was hung up on. All of the calls from the Philippines by way of the State of Arizona showed the same phone numbers for each and every call made to Plaintiffs cellphone. (Franklin Dec¶10, 14) Exhibit C *(Id. at Ins 1-82)*

18. Franklin testified that 81 of the 82 calls listed on his call log fall into one of four categories:

1) calls from CMI that he answered and in which he was greeted by an "automated voice" that instructed him to "stay on the line for a very important message from citimortgage [sic]," where he sometimes later spoke with a live customer service representative;

**Response: Undisputed**

2) calls from CMI that he answered and in which he was greeted by an "automated message" stating "please give us a call back about a personal business matter," then the call ended;

**Response: Undisputed**

3) calls from CMI which he answered and in which he spoke to a live customer

6

service representative (no "automated message" used); and

**Response: Disputed.** Plaintiff answered at least 7 calls and was greeted by an automated voice message and after several seconds later a live agent came on the line. (Franklin Dec¶9) [(Exhibit C) Id. at Ins #, 1, 4, 9, 41, 58, 61, 68]

4) calls from CMI he did not answer and that did not result in any voice message. (Franklin Tr., 136:1-137:11.)

**Response: Undisputed**:

19. The only call on Franklin's call log that does not fit into these four categories is entry #55, which Franklin concedes was a voicemail left by a human being. (Franklin Tr., 133:7-11, 137:8-11.)

**Response: Undisputed**: To the extent that this call did not come from the Philippines, however it appeared to come from one of the calls from a city within the state of Missouri. (Franklin Dec¶14)[(Exhibit C) Id. at Ins #, 55)

20. Entry #5 on the call log is erroneous; it is a continuation of entry #4 and should not have been a separate entry. (Franklin Tr., 55:22-56:9.)

**Response: Undisputed:**

21.For clarity, the entries in Franklin's call log can be summarized as follows:

7

| | Category description | Entries corresponding to Category | Total number of calls in Category |
|---|---|---|---|
| 1 | Calls from CMI that Franklin answered and in which he was greeted by an "automated voice" that instructed him to "stay on the line for a very important message from citimortgage [sic]," where he sometimes later spoke with a live customer service representative | 1, 4, 7, 8, 9, 12, 13, 14, 40, 41, 42, 58, 61, 65, 66, 68, 72, 73, 74, 76, 79, 81 | 22 |
| 2 | Calls from CMI that Franklin answered and in which he was greeted by an "automated message" stating "please give us a call back about a personal business matter," then the call ended | 15, 16, 19, 20, 23, 24, 32, 33, 34, 35, 39, 43, 44, 45, 47, 49, 52, 62, 70, 71, 83 | 21 |
| 3 | Calls from CMI that Franklin answered and in which he spoke to a live customer service representative (no "automated message" used) | 6, 10, 11, 25, 26, 28, 29, 30, 31, 36, 37, 38, 48, 50, 51, 53, 60 | 17 |
| 4 | Calls from CMI that Franklin did not answer and that did not result in any voice message | 2, 3, 17, 18, 21, 22, 27, 46, 54, 56, 57, 59, 63, 64, 67, 69, 75, 77, 78, 80, 82 | 21 |
| | | *Total calls:* | *81* |

(Franklin Tr., 36:13-37:20; 52:20-53:8; 54:1-22; 56:17-57:8; 57:21-58:11; 58:25-59:13; 60:9-20; 61:11-14; 61:22-62:11; 62:19-63:3; 63:14-21; 64:16-22; 65:17-25; 66:19-24; 67:24-68:14; 70:8-20; 71:12-72:4; 72:12-21; 72:25-73:11; 74:3-20; 75:12-18; 76:12-17; 77:3-10; 78:8-20;

8

79:14-24; 80:18-81:5; 82:15-83:1; 83:7-17; 83:22-84:11; 84:21-85:12;

85:16-25; 86:4-9; 86:17-88:5; 88:10-23; 89:20-90:12; 91:9-25; 92:15-

93:12;  93:25-94:13;  94:18-95:4;  95:9-96:13;  97:3-22;  98:15-99:3;

101:17-102:3;  103:13-24;  104:16-22;  105:22-106:9;  106:25-107:16;

108:6-109:7; 109:11-22; 110:11-111:13; 111:20-112:7; 113:4-13; 114:7-

115:15; 117:9-118:24; 119:22-120:5; 120:14-121:1; 121:8-25; 122:17-

123:14; 124:3-19; 125:3-16; 129:9-130:1; 130:10-23; 131:19-22; 132:1-

133:1.)

**Response:  Disputed.** Category #3 is disputed because Plaintiff answered at least

7 calls and was greeted by an automated voice message and a few seconds later a

live agent came on the line.  (Franklin Dec¶9) [(Exhibit C) Id. at Ins #, 1, 4, 9, 41,

58, 61, 68]

22. Only 43 of the 82 calls involved the use of an artificial or prerecorded voice

(Categories 1 and 2 above). (Franklin Tr., 36:13-37:20; 52:20-

53:8; 54:1-22; 56:17-57:8; 57:21-58:11; 58:25-59:13; 60:9-20; 61:11-14;

61:22-62:11;  62:19-63:3;  63:14-21;  64:16-22;  65:17-25;  66:19-24;

67:24-68:14;  70:8-20;  71:12-72:4;  72:12-21;  72:25-73:11;  74:3-20;

75:12-18; 76:12-17; 77:3-10; 78:8-20; 79:14-24; 80:18-81:5; 82:15-83:1;

83:7-17; 83:22-84:11; 84:21-85:12; 85:16-25; 86:4-9; 86:17-88:5; 88:10-

9

**Response: Undisputed:**

25. All six of the recordings involve a live, human agent of CMI. None of the six recordings evidences the use of an artificial or prerecorded voice. (Franklin Tr., 138:20-139:25; 140:17-141:12; 142:5-143:5; 143:12-144:7; 144:18-145:3; Keeney Dec. at ¶¶ 11, 21-23; Ex. C15-19, C21 attached thereto.)

**Response: Undisputed:**

26. Franklin does not have any evidence of CMI using an artificial or prerecorded voice in a call to his cell phone listed in Categories 1 and 2 of the table in Paragraph 21, other than his own recollection of it occurring. (Franklin Tr., 42:21-25; 55:4-6; 55:15-21; 58:20-24; 59:23-60:8; 61:4-10; 64:9-12.; 65:4-12; 66:19-21; 67:12-21; 69:6-15; 71:2-11;73:18-74:2; 75:19-22; 76:2-8; 79:25-80:2; 80:8-14; 81:15-25; 89:9-19;90:21-91:5; 92:7-14; 93:13-20; 96:18-97:2; 98:8-14; 99:13-15; 100:11-16; 102:20-103:4; 103:9-12; 104:6-15; 105:12-21; 107:24-108:5; 110:2-10; 112:13-21; 113:22-114:6; 119:9-17; 122:7-16; 123:21-124:2; 124:20-125:2; 127:2-6; 131:10-18; 131:19-22.)

**Response: Disputed.** Plaintiff produced precise call logs based on personal knowledge and firsthand experience at the time the calls happened dating back to 2018. Plaintiff Exhibit C is a precise personal call log and documented records since 2018 thru 2019. The documented calls were kept daily and recorded directly

11

of off of Plaintiffs personal cellphone ending in 3733. (Franklin Dec¶10, 13)

27. Franklin concluded that the voices were "automated" because the messages were "one-sided conversations" that were "generic." (Franklin Tr., 40:41:10; 55:7-11; 58:12-19; 59:19-22; 63:22-64:5; 64:23-65:3;66:25-67:11; 69:1-5; 70:21-71:1; 73:12-17; 75:23-76:1; 80:3-7; 81:6-12; 89:1-5; 90:13-20; 92:1-6; 93:4-12; 96:11-17; 98:2-7; 99:4-12; 102:8-19;103:25-104:5;   104:23-105:11;   107:17-23;   109:23-110:1;   112:8-12;113:14-21;   118:25-119:8;   122:1-6;   123:15-20;   124:17-19; 125:18-24;130:2-9; 130:24-131:9; 131:19-22.)

**Response: Disputed:** The automated message greetings did not involve a conversation whereby, two people exchanged words. The greetings stated ""Please stay on the line for a very important message from citimortgage" or "please give us a call back about a personal business matter".  (Franklin Dec¶10)

28. Franklin has not retained or produced any recordings of any such "automated" voice, and he has never had anyone listen to the voice and confirm that it is an automated voice as opposed to live speech. (Franklin Tr., 55:4-6; 58:7-8; 59:23-24; 60:21-22; 64:6-8; 65:11-12; 69:6-7; 71:2-3; 73:18-20; 81:15-17; 89:14-16; 91:1-2; 92:7-9; 93:13-14; 96:18-20;99:16-100:10; 102:20-23; 103:9-12; 104:6-8; 105:12-14; 108:2-3; 110:9-10; 112:13-14; 114:1-3; 119:16-17; 125:1-2; 131:14-15; 131:19-22.)

**Response: Disputed.**  The calls to Plaintiff were automated greetings or messages whereby, Plaintiff documented word for word what the greeting stated.  Plaintiff doesn't need to have anyone listen to a message to confirm that it's automated, and further...Plaintiff is competent to testify about the stated matter of automated messages and greetings. **Franklin Dec¶10, 13)**

**C. CMI's Telephone Platform**

29.Between March 30, 2017, and March 26, 2019, at various times CMI used the Aspect Unified IP 7.3 dialing platform ("Aspect Platform") to initiate communications to its borrowers. (CMI Dec., ¶ 16.)

**Response: Disputed.**  Plaintiff did not receive any calls to his cellphone in the year of 2017.  Plaintiffs began receiving calls on his cellphone ending in 3733 in 2018 thru 2019. (Franklin Dec¶5)

30.The Aspect Platform only initiates communications to telephone numbers uploaded by CMI. The Aspect Platform does not generate or initiate communications using a random or sequential number generator. (CMI Dec., ¶ 17; Declaration of Don Hudecek ("Hudecek Dec."), attached hereto as **Exhibit D**, at ¶ 8.)

**Response: Disputed:**  Plaintiff has received calls from a system that that greeted him with over 43 automated voice message greetings on his phone. (Franklin Dec¶15)

13

31. Aspect Software, Inc. ("Aspect") is the supplier of the Aspect Platform for CMI. (Hudecek Dec., ¶¶ 4-6.)

**Response: Undisputed**

32. The Aspect Platform is a contact center system that supports both inbound and outbound engagement. The Aspect Platform includes a dialer component in order to support outbound engagements. (Hudecek Dec., ¶ 5.)

**Response: Undisputed**

33. None of the versions of Aspect's Unified IP, including the Aspect Platform, have the capacity to produce phone numbers using a random or sequential number generator. (Hudecek Dec., ¶ 8.)

**Response: Disputed:** Plaintiff has received calls from a system that greeted him with over 43 automated voice message greetings on his phone. (Franklin Dec¶15)

34. The only telephone numbers that the Aspect Platform can dial are those inputted into an Aspect customer's database and downloaded by the customer into the Aspect Platform. (Hudecek Dec., ¶ 8.)

**Response: Undisputed**

35. Aspect is unaware of any application that would alter the Aspect Platform's behavior such that the Aspect Platform would be capable of producing phone number using a random or sequential number generator. (Hudecek Dec., ¶ 8.)

14

**Response: Undisputed**

**D. Communications between CMI and Franklin**

36. CMI maintains a record of each time it contacts any borrower on any loan it services, whether that contact occurred by using the Aspect Platform or by other means, such as a direct, agent-initiated phone call. (CMI Dec., ¶ 18.)

**Response: Disputed.** The records maintained by the Defendant are extremely inaccurate, because at no time did Plaintiff indicate that he owned a phone number ending in 2542 where he wished be contacted by the Defendant in 2017. **Franklin Dec¶ 5,7,**

37. A report of all the calls CMI made to Franklin regarding the Loan between March 30, 2017, and March 26, 2019, is maintained in CMI's

business records and is often referred to as the "Communication Report."

(CMI Dec., ¶¶ 19, 20.)

**Response: Disputed.** This report is inaccurate, as it has calls placed to Plaintiff starting in 2017 with a number ending in 2542. Plaintiff did not own a phone number ending in 2542 in 2017. Plaintiff did not get any calls from the Defendant concerning this litigation until 2018. (Franklin Dec¶5,7)

38. The Communication Report for the Loan includes not only calls to Franklin made by CMI using the Aspect Platform, but all calls made to Franklin concerning

15

the Loan – regardless of method – between March 30, 2017, and March 26, 2019.
(CMI Dec., ¶ 20.)

**Response: Disputed:**  This report is erroneously inaccurate, as it has calls placed
to Plaintiff starting in 2017 with a number ending in 2542.  Plaintiff did not own a
phone number ending in 2542 in 2017.  Plaintiff did not get any calls from the
Defendant concerning this litigation until 2018.  (Franklin Dec¶5,7)

39.The only calls made to Franklin using the Aspect Platform occurred between
March 30, 3017, and April 7, 2017. (CMI Dec., ¶¶ 21, 22, Ex. A3 attached
thereto.)

**Response: Disputed.** This report is erroneously inaccurate, as it has calls placed
to Plaintiff starting in 2017 with a number ending in 2542.  Plaintiff did not own a
phone number ending in 2542 in 2017.  Plaintiff did not get any calls from the
Defendant concerning this litigation until 2018.  (Franklin Dec¶5,7)

40.CMI did not make the calls in that time frame (March 30, 3017, to April
7, 2017) to Franklin's Cell Phone. Those calls were made to a different phone
number ending in 2542. (CMI Dec., ¶ 22.)

**Response: Disputed.**  Plaintiff did not own a phone number in 2017 with a
number ending in 2542.  Plaintiff did not get any calls from the Defendant
concerning this litigation until 2018.  (Franklin Dec¶5,7)

16

**E. CMI'S Use of Agent-Initiated Contact to Call Franklin's Cell Phone**

41. CMI did not use the Aspect Platform to contact Franklin's Cell Phone between May 10, 2017, and March 26, 2019. (CMI Dec., ¶¶ 23-25.)

**Response: Disputed.** Plaintiff did not own a phone number in 2017 with a number ending in 2542. Plaintiff did not get any calls from the Defendant concerning this litigation until 2018. (Franklin Dec¶5,7)

42. Rather, every call made to Franklin's Cell Phone between May 10, 2017, and March 26, 2019, was an "Agent-Initiated Contact," meaning a live, human agent reviewed the account in question and initiates the phone call by dialing the primary phone number associated on the account by hand on a telephone. (CMI Dec., ¶¶ 23-25.)

**Response: Disputed.** This is illogical...Plaintiff was informed that the calls came from the Philippines outside of the United States. Defendant CMI cannot explain how someone in a third world country can hand dial Plaintiffs cellphone through the State of Arizona directly. **(Statement of Additional Disputed Facts "SADF" #1, 2)**(Franklin Dec¶8)

43. When an Agent-Initiated Contact call is connected, the live agent speaks directly to the call's recipient. (CMI Dec., ¶ 24.)

**Response: Disputed.** On at least seven calls Plaintiff was greeted by an

automated voice message and after several seconds had passed, a live agent came

on the line.  (Franklin Dec¶9)

44. There is no artificial or prerecorded voice used in any part of an Agent- Initiated

Contact. (CMI Dec., ¶¶ 24, 26.)

**Response: Disputed.** Plaintiff has received calls from a system that greeted him

with over 43 automated voice message greetings on his phone. (Franklin Dec¶15)

## Local Rule 56.1(B) (3) Statement of Additional Disputed Facts

Plaintiff hereby asserts the following additional, disputed material facts that

require the denial of Defendant's Motion for Summary Judgement:

1.  On February 13, 2018, Defendant CMI representative informed Plaintiff that

they were located in the Asia region of the world, specifically, that he was located

in the country of the Philippines and that's where the call originated.   **(Franklin**

**Dec¶ 8) (Exhibit C, Call Log *Ins at 1*)**

2.  On each and every call that originated from the Philippines, the caller

identification showed a number ported from the State of Arizona ending in 1247.

**(Franklin Dec¶ 14) (Exhibit C, Call Log *Ins at 1-82*)**

3.  On February 22nd 2018 Plaintiff answered his cellphone ending in 3733 and

was told by a representative that he was calling from the country of the Philippines

and that the calls would continue because they were automated calls. **(Franklin Dec¶ 11) (Exhibit C, Call Log *Ins at 6*)**

Dated: April 19th, 2021                                    Respectfully submitted,

                                                             Ricky R. Franklin
                                                             708 Brambling Way
                                                             Stockbridge, GA 30281
                                                             678-650-3733
                                                             rrfrank12@hotmail.com

19

# EXHIBIT B

**IN UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| RICKY R. FRANKLIN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:19-CV-3852-MLB |
| | ) | Honorable Judge Michael L. |
| v. | ) | Brown |
| | ) | |
| CITIMORTGAGE, INC., | ) | |
| | ) | |
| Defendant. | ) | JURY TRIAL DEMANDED |
| | ) | |

## <u>DECLARATION OF RICKY R. FRANKLIN IN SUPPORT OF HIS MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANTS MOTION FOR SUMMARY JUDGMENT</u>

I declare under penalty of perjury pursuant to 28 U.S.C. section 1746 as follows:

1. I am over 18 years of age and competent to make this declaration.

2. I am the Plaintiff in the above-styled case.

3. Plaintiff is the sole owner and user of phone number xxx-xxx-3733, where the calls took place concerning this litigation.

4. Plaintiff was informed by Defendant CMI in a previous lawsuit back in 2016, that they began servicing his loan in 2003. *Citimortgage Inc vs Franklin* No. 1:15-cv-04396-LMM (2016)

5. Plaintiff did not receive any phone calls on his cellphone ending in 3733 in 2017, however in February 2018 Plaintiff began receiving calls on his cellphone ending in 3733

6. At no time did Plaintiff inform Defendant CMI to remove his requested "cease and desist" status.

7. Plaintiff has never owned a phone number ending in 2542 or used it as his personal cellphone between 2017 thru 2019..

8. On the very first call, on February 13, 2018 @ 1648hrs, Plaintiff was told by the representative that he was calling from the country of Philippines that showed an area code from the State of Arizona.  Plaintiff informed the representative that he did not want to receive phone calls on his cellphone. Additionally, on this call Plaintiff was greeted by an automated voice greeting *[(Exhibit C) Id. at Ins #1]*

9. Plaintiff answered at least 7 calls and was greeted by an automated voice message and after several seconds had passed, a live agent came on the line. The dates are as follows:  February 13, February 21, March 20, July 25, October 31, November 21, 2018 and January 10, 2019 *[(Exhibit C) Id. at Ins #, 1, 4, 9, 41, 58, 61, 68]*

10. Plaintiff has received at least 82 phone calls from Defendant CMI.  On more than 43 of the calls, Plaintiff was greeted by an automated message that

stated "Please stay on the line for a very important message from citimortgage" or "please give us a call back about a personal business matter". The calls occurred on the following dates that correspond to the Plaintiffs call log inserts: February 21; March 15, 17, 20, 23, 24, 24, 26, 27; April 18, 19, 24, 25; June 1, 2, 4, 5; July 20, 24, 25, 31; August 3, 15, 16, 23, 30; September 27; October 31; November 21, 23; December 7, 8 all in 2018; January 10, 21, 24, 26, 29; February 28; March 6, 18, 2019 *[(Id. at Ins 4, 7, 8, 9, 12, 13, 14, 15, 16, 19, 20, 23, 24, 32, 33, 34, 35, 39, 40, 41, 42, 43, 44, 45, 47, 49, 52, 58, 61, 62, 65, 66, 68, 71, 72, 73, 74, 76, 79, 81, 83, 7, 18, 22, 35, 38, 39,)]*

11. On February 22nd 2018 Plaintiff answered my cellphone ending in 3733 and was told by a representative that he was calling from the country of the Philippines and that the calls would continue because they were automated calls. *[(Exhibit C) Id. at Ins #6]*

12. On February 13, 2018@ 1648hrs I revoked consent to be contacted on my cellphone and also on more than 15 different occasions on the following dates: February 13, 21, March 20, 21, 22; April 26, 27; Mary 22, 31; July 19, 25, 31; October 31; November 21; 2018 January 10, 2019 " *[Exhibit C (Id. at Ins 1, 4, 9, 10, 11, 25, 26, 30, 31, 38, 41, 42, 58, 61, 68,)]*

13. Exhibit C is a precise personal call log and documented records since 2018 thru 2019. The documented calls were kept daily and recorded directly of off of my personal cellphone ending in 3733.

14. Seventy-six of the calls were from overseas in Asia, specifically in the country of the Philippines with a phone number ending in 1247. Six of the calls came from numbers listed in the United States from a city within the state of Missouri. Twenty-one of the calls went unanswered by me, and finally, six of the calls, I answered and was hung up on or could not understands the person on the other end of the call.

15. Plaintiff has received calls from a system that greeted him with over 43 automated voice message greetings on his phone.

I declare under penalty of perjury that the foregoing is true and correct.

By: _____

Ricky R. Franklin

Date: _April 19th, 2021_

# EXHIBIT C

## Call log to my cellphone 678-650-3733 from Citimortgage starting in 2018

1. February 13 2018, @ 1648, greeted by an automated voice that said "please stay on the line for a very important message from citimortgage" I talked to a representative who stated that they were calling from the Philippines with a number as 520 441-1247an Arizona number on my caller Identification. I informed the representative that he did not want to receive phone calls on his cellphone. Recorded part of call

2. February 15, 2018 I receive a call from 520-441-1247 at 1850 hrs

3. February 21, 2018 I received a call from 520-441-1247 at 1154 hrs.

4. February 21, 2018 @ 1143hrs, I received a call from 520-441-1247. Greeted by an automated message that stated ""please stay on the line for an important message from citimortgage" I told the representative to stop calling my cellphone

5. I told the representative to stop calling my cellphone. Recorded part of call

6. February 22, 2018 I received a call from 520-441-1247 at 1259 hrs. Talked to representative...at that time the representative from the Philippines stated that "the calls were automated and they would continue".

7. March 15, 2018 I received a call from 520-441-1247 at 1154 hrs. Automated message stated ""please hold for an important message from CitiMortgage"

8. March 17, 2018 I received a call from 520-441-1247 at 1635 hrs. Automated message stated ""please hold for an important message from CitiMortgage"

9. March 20, 2018 @ 1421hrs, I received a call from 816-420-4632. Greeted by an automated message that stated ""please stay on the line for an important message from citimortgage" I told the representative to stop calling my cellphone

10. March 21, 2018 @ 1358hrs, I received a call from 816-420-4632. I told the representative to stop calling my cellphone.

11. March 22, 2018 @ 1210hrs, I received a call from 816-420-4632. I told the representative to stop calling my cellphone.

12. March 23, 2018 I received a call from 520-441-1247 at 1542 hrs. Automated message stated ""please hold for an important message from CitiMortgage"

13. March 24, 2018 I received a call from 520-441-1247 at 1203 hrs. Automated message stated ""please hold for an important message from CitiMortgage"

14. March 24, 2018 I received a call from 520-441-1247 at 1204 hrs. Automated message stated ""please hold for an important message from CitiMortgage"

15. March 26, 2018 I received a call from 520-441-1247 at 1529 hrs. Left automated voice message that stated "please give us a call back about a personal business matter"

1

16. March 27, 2018 I received a call from 520-441-1247 at 1231 hrs.  Left automated voice message that stated "please give us a call back about a personal business matter"
17. March 28, 2018 I received a call from 520-441-1247 at 1402 hrs
18. March 29, 2018 I received a call from 520-441-1247 at 1302 hrs
19. April 18, 2018 I received a call from 520-441-1247 at 1423 hrs.  Left automated voice message that stated "please give us a call back about a very important business matter"
20. April 19, 2018 I received a call from 520-441-1247 at 1359 hrs.  Left automated voice message that stated "please give us a call back about a personal business matter"
21. April 20th 2018, I received a call from Philippines thru a number from Arizona.520-441-1247 at 1516 hrs
22. April 23 2018, I received a call from Philippines thru a number from Arizona.520-441-1247 at 1417 hrs
23. April 24, 2018 I received a call from 520-441-1247 at 1448 hrs.  Left automated voice message that stated "please give us a call back about a very important business matter"
24. April 25, 2018 I received a call from Philippines thru a number from Arizona.520-441-1247 at 1316 hrs.  Left automated voice message that stated "please give us a call back about a personal business matter"
25. April 26, 2018 @ 1357hrs, I received a call from Philippines thru a number from Arizona.520-441-1247 from Philippines thru a number from Arizona.  I told the representative to stop calling my cellphone
26. April 27, 2018 @ 1239hrs, I received a call from 816-420-4632.  I told the representative to stop calling my cellphone.  Recorded part of call
27. May 21, 2018, I received a call from Philippines thru a number from Arizona.520-441-1247 at 1406 hrs
28. May 22, 2018 @ 0950hrs, I received a call from Philippines thru a number from Arizona.520-441-1247 from Philippines thru a number from Arizona. When I answered I said hello 5 times and was hung up on.
29. May 22, 2018 @ 1000hrs, I received a call from Philippines thru a number from Arizona.520-441-1247 from Philippines thru a number from Arizona. Talked to a representative, Recorded part of call
30. May 22, 2018 @ 1138hrs, I received a call from Philippines thru a number from Arizona.520-441-1247 from Philippines thru a number from Arizona.  I told the representative to stop calling my cellphone

31. May 31, 2018 @ 1044hrs, I received a call from Philippines thru a number from Arizona.520-441-1247 from Philippines thru a number from Arizona. I told the representative to stop calling my cellphone

32. June 1, 2018 @ 1027hrs, I received a call from Philippines thru a number from Arizona.520-441-1247 from Philippines thru a number from Arizona. Left automated voice message that stated "please give us a call back about a personal business matter"

33. June 2, 2018 @ 1254hrs, I received a call from Philippines thru a number from Arizona.520-441-1247 from Philippines thru a number from Arizona. Left automated voice message that stated "please give us a call back about a personal business matter"

34. June 4, 2018 @ 1510hrs, I received a call from Philippines thru a number from Arizona.520-441-1247 from Philippines thru a number from Arizona. Left automated voice message that "please give us a call back about a personal business matter"

35. June 5, 2018 @ 1437hrs, I received a call from Philippines thru a number from Arizona.520-441-1247 from Philippines thru a number from Arizona. Left automated voice message that stated ""please give us a call back about a personal business matter"

36. June 19, 2018 @ 1444hrs, I received a call from Philippines thru a number from Arizona.520-441-1247 from Philippines thru a number from Arizona Recorded part of call

37. June 30, 2018, I received a call from Philippines thru a number from Arizona.520-441-1247 at 1406 hrs.

38. July 19, 2018, I received a call from Philippines thru a number from Arizona.520-441-1247 at 1406 hrs. I told the representative to stop calling my cellphone

39. July 20, 2018 @ 1327hrs, I received a call from Philippines thru a number from Arizona.520-441-1247 from Philippines thru a number from Arizona. Left automated voice message that stated "please give us a call back about a personal business matter"

40. July 24, 2018 @ 1327hrs, I received a call from 520-441-1247. I answered my cellphone and was greeted by an automated voice that stated "please stay on the line for an important message from citimortgage". I was then hung up on.

41. July 25, 2018 @ 1400hrs, I received a call from 520-441-1247. I answered my cellphone and was greeted by an automated voice that stated "please stay on the line for an important message from citimortgage". I told the representative name Ryan to stop calling my cellphone.

42. July 31, 2018 @ 1609hrs, I received a call from 520-441-1247.  I answered my cellphone and was greeted by an automated voice that stated "please stay on the line for an important message from citimortgage".  I told the representative name to stop calling my cellphone.

43. August 3, 2018 @ 1532hrs, I received a call from Philippines thru a number from Arizona.520-441-1247 Left automated voice message that stated "please give us a call back about a personal business matter"

44. August 15, 2018 @ 1851hrs, I received a call from Philippines thru a number from Arizona.520-441-1247 Left automated voice message that stated "please give us a call back about a personal business matter"

45. August 16, 2018 @ 1438hrs, I received a call from Philippines thru a number from Arizona.520-441-1247 Left automated voice message that stated "please give us a call back about a personal business matter"

46. August 22, 2018 @ 1954hrs, I received a call from Philippines thru a number from Arizona.520-441-1247.  No message left on cellphone.

47. August 23, 2018 @ 1426hrs, I received a call from Philippines thru a number from Arizona.520-441-1247 Left automated voice message that stated "please give us a call back about a personal business matter"

48. August 28, 2018 @ 1408hrs, I received a call from 520-441-1247.  I answered my cellphone and could not understand the person on the line.  Unable to hear and was hung up on.

49. August 30, 2018 @ 1033hrs, I received a call from Philippines thru a number from Arizona.520-441-1247 Left automated voice message that stated "please give us a call back about a personal business matter"

50. September 19, 2018 @ 1657hrs, I received a call from 520-441-1247.  I answered my cellphone and could not understand the person on the line.  Unable to hear and was hung up on.

51. September 26, 2018 @ 1545hrs, I received a call from 816-420-4632. Unable to hear and was hung up on.

52. September 27, 2018 @ 1349hrs, I received a call from Philippines thru a number from Arizona.520-441-1247 Left automated voice message that stated "please give us a call back about a personal business matter"

53. September 29, 2018 @ 1426hrs, I received a call from 520-441-1247.  I answered my cellphone and could not understand the person on the line.  Unable to hear and was hung up on.

54. October 2, 2018 @ 1830hrs, I received a call from 520-441-1247

55. October 24, 2018. I received a call from 816-420-4632. A representative left a voice message that stated "please give us a call back about a personal business matter at 800-723-7906"

4

56. October 25, 2018 @ 1545hrs, I received a call from Philippines thru a number from Arizona.520-441-1247.

57. October 27, 2018 @ 1549hrs, I received a call from Philippines thru a number from Arizona.520-441-1247

58. October 31, 2018 @ 0953hrs, I received a call from 520-441-1247. I answered my cellphone and was greeted by an automated voice that stated "please stay on the line for an important message from citimortgage". I told the representative to stop calling my cellphone.

59. November 1, 2018 @ 0900hrs, I received a call from Philippines thru a number from Arizona.520-441-1247

60. November 3, 2018 @ 1411hrs, I received a call from Philippines thru a number from Arizona.520-441-1247 Said hello multiple times, was unable to hear and was hung up on.

61. November 21, 2018 @ 1007hrs, I received a call from 520-441-1247. I answered my cellphone and was greeted by an automated voice that stated "please stay on the line for an important message from citimortgage". I told the representative to stop calling my cellphone.

62. November 23, 2018 @ 1147hrs, I received a call from 520-441-1247. Left an automated voice message that stated "please give us a call back about a personal business matter"

63. December 5, 2018 @ 1430hrs, I received a call from Philippines thru a number from Arizona.520-441-1247

64. December 6, 2018 @ 1156hrs, I received a call from Philippines thru a number from Arizona.520-441-1247

65. December 7, 2018 @ 1402hrs, I received a call from 816-420-4632. Automated message stated ""please hold for an important message from CitiMortgage"

66. December 8, 2018 @ 1557hrs, I received a call from 816-420-4632. Automated message stated ""please hold for an important message from CitiMortgage"

67. December 12, 2018 @ 1005hrs, I received a call from Philippines thru a number from Arizona.520-441-1247

68. January 10, 2019 @ 1703hrs, I received a call from Philippines thru a number from Arizona.520-441-1247 I answered my cellphone and was greeted by an automated voice that stated "please stay on the line for an important message from citimortgage". I told the representative to stop calling my cellphone.

69. January 17, 2019 @ 1658hrs, I received a call from Philippines thru a number from Arizona.520-441-1247

70. January 19, 2018 @ 1359hrs, I received a call from Philippines thru a number from Arizona.520-441-1247. Left an automated voice message that stated "please give us a call back about a personal business matter"

71. January 21, 2019 @ 1308hrs, I received a call from Philippines thru a number from Arizona.520-441-1247. Left an automated voice message that stated "please give us a call back about a personal business matter"

72. January 24, 2019 @ 1252hrs, I received a call from Philippines thru a number from Arizona.520-441-1247. Automated message stated ""please hold for an important message from CitiMortgage"

73. January 26, 2019 @ 1114hrs, I received a call from Philippines thru a number from Arizona.520-441-1247. Automated message stated ""please hold for an important message from CitiMortgage"

74. January 29, 2019 @ 1407hrs, I received a call from Philippines thru a number from Arizona.520-441-1247. Automated message stated ""please hold for an important message from CitiMortgage"

75. January 30, 2019 @ 11658hrs, I received a call from Philippines thru a number from Arizona.520-441-1247.

76. January 31, 2019 @ 1416hrs, I received a call from Philippines thru a number from Arizona.520-441-1247. Automated message stated ""please hold for an important message from CitiMortgage"

77. February 2, 2019 @ 1623hrs, I received a call from Philippines thru a number from Arizona.520-441-1247

78. February 13, 2019 @ 1043hrs, I received a call from Philippines thru a number from Arizona.520-441-1247

79. February 28, 2019 @ 0822hrs, I received a call from Philippines thru a number from Arizona.520-441-1247. Automated message stated ""please hold for an important message from CitiMortgage"

80. March 2, 2019 @ 1421hrs, I received a call from Philippines thru a number from Arizona.520-441-1247

81. March 6, 2019 @ 1217hrs, I received a call from Philippines thru a number from Arizona.520-441-1247. Automated message stated ""please hold for an important message from CitiMortgage"

82. March 8, 2019 @ 1422hrs, I received a call from Philippines thru a number from Arizona.520-441-1247

83. March 18, 2019 @ 1430hrs, I received a call from Philippines thru a number from Arizona.520-441-1247. Left an automated voice message that stated "please give us a call back about a personal business matter"

**End of Call Log**

6